OCTOBER AND NOVEMBER TERM, 1880, No. 106.

# Appeal of the Wheeling, Pittsburgh and Baltimore Railroad Company.

1. A case stated being in the nature of a special verdict is a judicial ascertainment of the facts, and the Court will not, after judgment and the affirmance of the judgment upon a writ of error, reopen it upon an allegation that the facts were fraudulently misstated.

2. To such a state of things the maxim *interest reipublicœ ut sit finis litium* applies with full force.

3. A railroad company, which is the successor of another railroad company, having secured the railroad franchises and property through a judicial sale, made by a decree of a Court having jurisdiction, and using lands, for the occupation of which the prior company had by parol entered into an agreement with the owner in regard to damages, fencing, and repairs, is bound by that agreement.

APPEAL of the Wheeling, Pittsburgh and Baltimore Railroad Company from the decree of the Court of Common Pleas of *Washington County*, refusing to stay a writ of *habere facias possessionem*.

Ejectment by J. J. Cleland, February 27th, 1878, against the above-named company.

December 30th, 1878, the plaintiff and defendant agreed upon the following case stated:

The plaintiff was, and is now, the owner of a tract of land

situated in Buffalo township, Washington County, Pa., through which the track of the Hempfield Railroad passes, occupying about twelve (12) acres thereof. The defendant corporation is the successor of the Hempfield Railroad Company, now claiming and owning its railroad, franchises, property, etc., it having been organized by John King, Jr., under the provisions of the act of 8th April, 1861, who became the purchaser of such franchises, etc., at a judicial sale made under a decree from the Supreme Court of Pennsylvania, and now using and occupying with its railway the strip of land for which the above action has been brought.

The Hempfield Railroad Company was incorporated by the legislature of Pennsylvania on the 15th day of May, 1850, and by the provisions of the act of incorporation, and a supplement thereto, approved the 12th day of April, 1851 (both of which acts of Assembly it is hereby agreed shall be taken as part of this case stated), the Hempfield Railroad Company was authorized to enter upon private property on the line of said railroad for the purpose of building and constructing its railroad, etc., making or tendering adequate compensation therefor to the owner or owners thereof. The Hempfield Railroad Company, some time about the year 1853, entered upon the lands of the plaintiff, and constructed its railroad track through and over the same without having agreed with the owner for the damage, or tendered a bond therefor, neither the company nor the plaintiff having ever applied to the Court to have damages assessed according to the provisions of the charter and its supplement.

Some time in the month of June, 1856, C. M. Reed, Esq., the then president of the Hempfield Railroad, and Edward Frost, the then local engineer stationed at Washington, Pa., came out to the place of the plaintiff for the purpose of adjusting and settling the damages which the company should pay for the use and occupation of the land; that C. M. Reed, Esq., and Edward Frost, on the part of the railroad, and the plaintiff then and there entered into a parol agreement touching the damages of plaintiff as follows, viz.: The Hempfield Railroad Company agreed "to pay the plaintiff the sum of eight hundred dollars as of that date with interest until paid, and to also build the necessary fences on both sides of the railroad track through the lands of the plaintiff, and to keep the same in repair so long as said lands should be used by the railroad company, and in consideration thereof the plaintiff was to make to the company a good title for the ground thus occupied by the railroad;" that in a few months after making this agreement the Hempfield Railroad Company, at its own proper cost and expense, built

[Appeal of the Wheeling, Pittsburgh and Baltimore Railroad Company.]

the fences through the lands of the plaintiff according to the provisions in the agreement. But about this time the Hempfield Railroad Company became insolvent, and from that date to the time of its transfer to the present defendant corporation, has not been able (to the knowledge of the plaintiff) to pay the money agreed on as above stated, nor any part thereof, and the same has never been paid, either by the Hempfield Railroad Company or by the defendant corporation.

Now, if the Court should be of the opinion that the plaintiff should recover, then judgment to be entered in his favor for the strip of land described in the præcipe for the writ of ejectment in the above case, but if not, then judgment to be entered for the defendant; the costs to follow the judgment, and either party to have the right to sue out a writ of error thereon.

July 2d, 1879, the Court below entered judgment upon the case stated for the plaintiff, which judgment was subsequently affirmed by the Supreme Court. Plaintiff then issued a *habere facias possessionem*.

Whereupon defendant presented a petition, February 5th, 1880, setting forth that defendant had discovered since the affirmance of the judgment that the facts as given in the case stated were untrue, that the title of Cleland was not acquired until 1866, that he was not the owner of the lands in 1878, but by two deeds, dated respectively March 21st, 1874, and April 1st, 1876, he had conveyed away all his right, title, and interest without reservation, and that the omission of the plaintiff to disclose these facts before judgment gave him an undue and unfair advantage.

It further represented that the public was largely interested in the operation of the road, that the land described was indispensably necessary to its usefulness, and that it was willing to pay whatever damages may have accrued to plaintiff by the appropriation of the land when such damages shall be adjudged.

The petitioner asked the Court:

1. To order a perpetual stay of proceedings upon the judgment, or,

2. To order such a stay of the writ of *habere facias* as will enable the parties to agree upon the amount of damages, or proceed to the legal ascertainment of them.

3. Further relief.

No answer to this petition was filed.

The Court below, HART, P. J., refused the prayers of the petition, filing the following opinion:

"The case stated being, according to all the authorities, in

the nature of a special verdict, it is a judicial ascertainment of the facts, and after judgment has been entered upon it, I can find no warrant for setting it aside and reopening the case.   It is very unusual for the Court to entertain a motion for a new trial after the expiration of four days from the date of the verdict, but there is no precedent whatever for entertaining such motion after judgment entered upon the verdict, and after a decree affirming such judgment on writ of error.   To such a state of things the maxim, *interest reipublicæ ut sit finis litium*, applies with full force.

"Taking the facts as they are in the case stated then, is the defendant company entitled to a stay of execution?

"That depends upon the answer to be given to the further question, whether the defendant is bound by the agreement of June, 1856, between the plaintiff and the Hempfield Railroad Company?  I think this last question must be answered in the affirmative.   I understand the law to be so settled in Western Pennsylvania Railroad Company *v.* Johnston, 9 P. F. Smith, 290.   In that case Johnston had obtained an award of viewers in his favor for five hundred dollars against the original company, the Northwestern Railroad Company; and judgment was entered on the award November 19th, 1859.   In 1865 a *scire facias* having issued on the judgment against the Northwestern Pennsylvania Railroad Company, with notice to its successor, the Western Pennsylvania Railroad Company, a case stated, embodying the facts, was agreed upon.   Upon the case stated the Court below entered judgment for the plaintiff.   Upon a writ of error taken by the latter company, the Supreme Court affirmed the judgment of the Court below.   It is true, the act of Assembly incorporating the purchasers of the franchises, etc., of the original company, expressly provided, 'that all unpaid damages which have accrued to landholders by reason of the original construction of said road, shall remain forever, until paid, a lien upon said road.'   In reference to that, however, AGNEW, J., says: 'Perhaps it would be sufficient for this case to say that the Western Pennsylvania Railroad Company accepted a charter repealing the charter of the Northwestern Railroad Company, and providing that the damages of the land-owners remaining unpaid should remain a lien on the road till paid; and, therefore, the legislature clearly intended that they should be paid by the new company, which, under the deed from Hirst, and under its charter, is possessor of all the rights and interests of the old company.   But,' he adds, ' the case rests upon other grounds.  The plaintiff, who has never parted with his rights, stands on the higher fundamental right of property; that it

[Appeal of the Wheeling, Pittsburgh and Baltimore Railroad Company.]

shall be taken and used by no one for the public purpose of a railroad without just compensation being made to him.' And again: ' When the alienees of the Northwestern Railroad Company came into possession they took the interest acquired *cum onere*. . . . . In law and equity neither they nor any one claiming the interest of the Northwestern Railroad by an act of eminent domain, subordinated by the law and the constitution to payment as the condition of its exercise, can hold and use the interests thus acquired without compensation. . . . . If the case stood at common law, this right of the land-owner to payment could be enforced by a special action on the case against the alienee. . . . . But the statute having provided a remedy it must be pursued. . . . . Here the statute has been pursued, the damages ascertained, and judgment rendered for their recovery against the original occupant. The owner has, therefore, exhausted his statutory power. . . . He can bring no new action, and cannot resort to a new petition for assessment. The matter has passed *in rem adjudicatam*. A new proceeding would reopen the whole field of inquiry at a late day, when the circumstances had entirely changed.' This language of Justice AGNEW I regard as applicable to the present case. It is true the claim for damages was never prosecuted by Cleland to judgment against the Hempfield Railroad Company. But the statutory remedy was as completely exhausted by the agreement of June, 1856, as it would have been by a report of viewers or the verdict of a jury, with judgment thereon in his favor. He is as effectually precluded from petitioning for an assessment as he would have been by such judgment, because his petition must allege a failure to agree with the Hempfield Company, contrary to the admitted fact. If it be said, that so far as the defendant company is concerned, the agreement of June, 1856, was *res inter alios acta*, the reply is that the objection would have applied with equal force to a judgment obtained against the Hempfield Company prior to the sale of its franchises to Mr. King.

"The truth is, we may apply here, with a change of names, the language of Justice AGNEW, *supra:* ' When the alienees of the Hempfield Railroad Company came into possession under their purchase, they took the interest acquired *cum onere ;*' and it would seem to follow, that they must, as the inherent condition of their exercise of the right of eminent domain acquired by their purchase, pay to the land-owner the compensation, which had either been agreed upon by the original parties, or judicially ascertained by an assessment of damages in a proceeding between the original parties, as provided by the statute.

"It follows, therefore, that until the defendant tenders the money due under the agreement of June, 1856, the writ of *habere facias* ought not to be stayed ; and the application for the rule to stay must be denied."

The petitioner then appealed, assigning as error this ruling of the Court.

*H. M. Dougan* for appellant.

The facts of the petition not having been denied, are to be taken as true, and the appellee is seeking to enforce a fraudulent judgment.　If the facts were untruly stated in order to get an unfair advantage, the judgment goes for nought: Sims *v.* Slacum, 3 Cranch, 307; Cochran *v.* Eldridge, 13 Wr., 365; Hall *v.* Hamlin, 2 Watts, 354; Johnson's Appeal, 9 Barr, 416 ; McClurg *v.* Wilson, 7 Wr., 439.

The company was injured and therefore has a status to impeach the judgment: Marr's Appeal, 28 P. F. Smith, 69.

One object of the petition was to obtain such a stay of the *habere facias*, as would have enabled the company to secure the eminent domain : Pittsburgh & Steubenville Railroad Company *v.* Jones, 9 P. F. Smith, 433.

Questions of damages to the land-owner could not have been appropriately determined in an action of ejectment, were not submitted in the case stated, and therefore, are not *res adjudicata :* Philadelphia & Reading Railroad Company *v.* Waterman, 4 P. F. Smith, 337.

*Braden & Miller* and *A. W. & M. C. Acheson* for appellee.

It was as much the duty of the appellant as the appellee to see that the facts were stated correctly. ·

The want of an answer to the petition does not admit the facts.

If the allegations are true, it would not have defeated the plaintiff in the ejectment.　It would only raise a question as to whom the damages would be payable: Railroad Company *v.* Hall, 1 Casey, 336.

If appellee sold the land the damages would belong to him : Seibert *v.* Levan, 8 Barr, 385 ; Zimmerman *v.* Canal Company, 1 W. & S., 346 ; Navigation Company *v.* Decker, 2 Watts, 343.

His vendees would have had notice of the title of the company : Railroad Company *v.* Jones, 14 Wr., 417.

The second point was set at rest by Western Pennsylvania Railroad Company *v.* Johnston, 9 P. F. Smith, 290.

NOVEMBER 25, 1881.—PER CURIAM: We affirm the order of the Court below upon the opinion of the learned presi-

dent.   We see no equity in the appellant to have the writ of *habere facias possessionem* stayed on the ground he set up in his petition.

Decree affirmed and appeal dismissed at the costs of the appellant.