# Estate of Christopher Schmidt, deceased. Appeal of Mary Bachman, a Legatee and Devisee under the will of Christopher Schmidt.

*Will—Construction of—Life estate.*

Testator devised his whole estate after his wife's death to his two children M. and H., "their heirs and assigns, share and share alike." He further directed as follows: "And in case my said (son) H. shall die unmarried and leaving no children, I desire and bequeath his one half unto my daughter M., and after her decease of my said daughter M., I give and bequeath all the same unto her my daughter M.'s own produced then surviving children, and it is my will and devise that as soon after my daughter M.'s death the youngest of her children is twenty-one years of age, the whole of the property shall be sold, at public or private sale and the whole amount of purchased money shall be devited to my said daughter M.'s then surviving children share and share alike." *Held*, that the qualifying clause relating to M.'s children and the sale of the property had reference only to the share which M. might take if H. died unmarried and leaving no children, and had no reference to the absolute interest in one half of the estate previously given to M.

*Jurisdiction—Orphans' court—Judgment against legatee.*

The orphans' court has no jurisdiction to examine into the validity of a judgment against a legatee, where it appears that a rule had been obtained to open a judgment, but that it had been discharged, and that the litigation relating to the judgment was at an end.

*Executors and administrators—Counsel fees—Discretion of orphans' court.*

What is a proper allowance for the counsel fee for an executor or administrator is a matter largely within the discretion of the orphans' court, since that court has a better opportunity than the Supreme Court has to investigate and determine such a question.

Argued Jan. 12, 1898. Appeal, No. 269, Jan. T., 1897, by Mary Bachman, from decree of O. C. Phila. Co., Jan. T., 1895, No. 168, dismissing exceptions to adjudication. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to adjudication.

The material portions of the adjudication were as follows:

It was shown that testator died January 18, 1888, leaving a will, duly admitted to probate on January 28, 1888, by which,

inter alia, he bequeathed and devised all his estate to his wife, Babetta Schmidt, during her natural life. She survived her husband and died in 1894. As she was sole executrix, letters of administration c. t. a. were granted on January 21, 1895, to her son, Henry Schmidt, the present accountant.

Testator further provided by his will as follows : "And from and immediately after the death of my said wife, Babetta Schmidt, I give, devise and bequeath the same unto my two children, Mary Schmidt, now married with G. Adolph Bachman, Dr., and Henry Schmidt, Dr., their heirs and assigns, share and share alike."

And further: "And in case my said (son) Henry shall die unmarried and leaving no children, I devise and bequeath his one-half unto my daughter, Mary Schmidt, now Mary Bachman.

"And after her decease—I give and bequeath all the same unto her, my daughter Mary's own produced, then surviving children and it is my will and desire that as soon after my daughter Mary's death the youngest of her children is twentyone years of age, the whole of the property shall be sold at public or private sale, and the whole amount of purchased money shall be devited [divided] to my said daughter's, Mary's, then surviving children, share and share alike."

The son and daughter of testator are both living. Upon an examination of the will, the first question suggested is what interest or estate do the two legatees and devisees take? It will be observed there is first an absolute estate given to the son and daughter as tenants in common, in the entire estate, real and personal. But this is qualified subsequently by the succeeding item or fourth clause of the will. By this testator seeks to provide for the possible contingency of the death of his son "unmarried and leaving no children," and says, "in case my said (son) Henry shall die unmarried and leaving no children," in which event he gives his one half to his (testator's) daughter, Mary.

From all the authorities it is settled that the proper construction to be placed upon such a provision is that testator contemplated the death of his son, not at a future indefinite time, at which the devise and gift over should take effect, but his death before his, testator's, own death. That is, if his son died

in his father's lifetime, unmarried and leaving no children, then the one half of the estate it was intended he should take under the will should then go to his sister. But if he survived his father, he would be entitled to his one half absolutely. This has happened and he is consequently entitled to one half of the estate in fee. That such is the proper construction is settled by Mickley's Appeal, 92 Pa. 514; McCormick v. McElligott, 127 Pa. 230; King v. Frick, 135 Pa. 575, and many other cases, which might be cited.

But this subsequent clause of the will also qualified the absolute interest previously given to the daughter, and shows the testator's intention to be, that she should take but a life estate in one half of the estate, with remainder to her children, and to be divided among them when the youngest attained lawful age.

The share of the daughter when ascertained must therefore be awarded to her for life, and upon her death to be accounted for, security to be first entered. . . .

Mr. Gorman objected to the allowance of the credit claimed for $1,000 for the professional services of counsel of accountant, upon the ground that a very considerable part of the services performed were rendered for the benefit of the administrator personally, and not in the settlement of the estate, and the sum asked to be allowed is an excessive and unreasonable amount to be charged to the estate. Mr. Cantrell objected to any deduction of the allowance claimed.

It is always a matter of great delicacy for the court to pass upon and ascertain the amount which should be awarded to counsel as compensation for professional services. But in cases of the settlement of estates, the question always is what proportion of the fund or estate before the court should be allowed to be expended by the executor or other trustee for the employment of counsel to aid, advise and assist him in its collection, final settlement and distribution, to and among the parties interested, whether creditors, heirs or legatees. The money is that of the parties interested therein, not of the trustee, and is to be expended only for proper and necessary services or advice of counsel and the amount to be paid therefor must be a reasonable and fair compensation. In the present case, the question is, not whether the amount asked for has been fairly earned by counsel, for this may be conceded, but whether the whole

amount should properly be deducted from the fund included in the account. It is complicated from the fact that the fund was realized by proceedings instituted by the administrator for his own individual benefit. He is the only creditor of the estate, and to pay his claims the real estate was sold. The counsel employed by him as administrator is also his individual professional adviser and counsel. The administrator thus occupied the dual position as a trustee and as a creditor. As administrator it was his duty to sell the real estate for payment of debts, under the act of assembly, and if there were other creditors, and he should refuse to perform that duty, he would be liable to dismissal. In his individual capacity he endeavored to effect an amicable compromise and settlement of his claims against the estate with his cotenant, and avoid proceeding to the extremity of a sale. But after long negotiations, they proved unavailing and, finally, by advice of counsel, he petitioned this court for an order of sale for payment of debts. A long and protracted litigation was then inaugurated. The judgments held by accountant as his claims against the estate were most strenuously attacked and resisted, both in this court and in the court of common pleas, and only after months of active opposition were they finally held valid claims and debts for payment of which the real estate could be sold. The real estate was finally sold at public sale, and in one instance a resale was had. Throughout, the continuous and constant services of counsel were required by the accountant, negotiations and settlements were made by counsel, who attended the sales and gave his personal attention to every matter connected therewith. His services and advice were in constant requisition, even down to the preparation of the account, its filing and adjustment before the court. For these laborious and constant professional labors and services the counsel for accountant deserves a liberal compensation. While this is the case, yet it must be reasonable; the amount realized is to be considered, and the views of the other tenant in common whose money is to be in part expended ought not to be wholly disregarded. She, by her counsel, is of opinion that the accountant who as a creditor is so largely interested, should personally contribute towards the amount which his counsel considers his full and fair compensation. In view of all the circumstances, the amount

realized, etc., the auditing judge has reached a conclusion that a fair and reasonable sum to allow out of the fund for the employment of counsel by the administrator as such will be the sum of $750, and this amount is accordingly allowed.

Mr. Gorman also objected to the credit claimed for gas bill on house, No. 1740, Otsego street, fifty-two cents. While this may be considered de minimis, yet Mr. Cantrell agreed it may be disallowed.

The only claims presented were by Mr. Cantrell for the accountant, who claimed to be awarded the sum of $7,145.07 with interest, from July 12, 1894, being the balance due upon three judgments recovered and entered in the courts of common pleas Nos. 2 and 3, as per copy of docket entries annexed, against Babette Schmidt, executrix of testator. These judgments were properly proved by the production of the original record of the courts of common pleas. Mr. Gorman objected to the award of payment of these judgments for the reason that they are not valid claims against the estate. He also claimed to set off against the same the sum of $3,200, moneys already in the hands of accountant, from the sale of other real estate of testator and not included in the account; and also the amount of rents collected by accountant up to the time of the sales of the real estate.

In answer to the objections, it need only be stated that accountant, in his claim, has given credit for the sum of $3,121, the net amount received by him. And as to the validity of the judgments that has been settled by this court. While as to the amount of rents received by accountant, this is a subject not now before the court, and does not form the subject of a set-off.

*Errors assigned* were in dismissing exceptions to adjudication.

*William Gorman*, for appellant.—Generally words which will create an estate tail in a devise of a freehold, will confer an absolute interest in a gift of personal property, but where there are any words or expressions in the bequest showing that the testator did not intend "issue" or "bodily heirs" or their equivalents, in their technical sense, but that he used them in the popular sense of "children," such words and expressions

are sufficient to displace the operation of the rule and limit the interest of the first taker to an estate for life, and where the expressions "leaving issue" or "leaving bodily heirs" have been used by a testator in a bequest they have universally been held to denote "children:" Garhard's Est., 160 Pa. 253. See also Snyder's App., 95 Pa. 174. No principle is better settled than that if a testator in one part of his will gave to a person an estate of inheritance of lands, or an absolute interest in personalty and in subsequent passages unequivocally shows that he means that the devisee or legatee is to take a lesser interest only, the prior gift is restricted accordingly, subsequent provisions will not avail to take an estate previously given the qualities that the law regard is inseparable from it, as for example, alienability, but they are operative to define the estate given, and to show that what without them might be a fee was intended to be a lesser estate: Sheets's Est., 52 Pa. 263.

*Francis S. Cantrell* and *Francis S. Cantrell, Jr.*, for appellee, cited on the nature of appellant's estate: Mickley's App., 92 Pa. 514; McCormick v. McElligott, 127 Pa. 230 ; King v. Frick, 135 Pa. 575 ; Miller's Est., 145 Pa. 561 ; Snyder's App., 95 Pa. 179 ; and on the question of counsel fees, Mumma's App., 127 Pa. 474.

OPINION BY MR. JUSTICE MITCHELL, May 2, 1898 :

Testator devised his whole estate to his widow for life, and after her death to his two children, appellant and Henry Schmidt, "their heirs and assigns, share and share alike." He then further devised "Fourth.—And in case my said (son) Henry shall die unmarried and leaving no children, I desire and bequeath his one half unto my daughter Mary Schmidt now Mary Bachman, and after her decease of my said daughter Mary I give and bequeath all the same unto her my daughter Mary's own produced then surviving children, and it is my will and devise that as soon after my daughter Mary's death the youngest of her children is twenty-one years of age, the whole of the property shall be sold, at public or private sale and the whole amount of purchased money shall be devited to my said daughter Mary's then surviving children share and share alike." The learned court below held that this clause

qualified not only the devise to Henry but also the absolute interest previously given to the daughter, and showed the testator's intention to be, that she should take but a life estate in one half of the estate, with remainder to her children, to be divided among them when the youngest attained lawful age. In this the court fell into error. The first gift was to Henry and appellant absolutely. The qualifying clause which followed referred to the death of Henry unmarried and without children, and upon the happening of that contingency devised "his one half" to appellant for life with remainder to her surviving children, to be sold on the youngest reaching the age of twenty-one. The manifest purpose of the clause is to dispose of Henry's half on the specified contingency, and there is no reference in it either express or by fair implication, to the half originally given to appellant. That was given to her absolutely but the other half if Henry should die unmarried and without children, was given to her for life with remainder to her surviving children. The direction for a sale when the youngest of such children should reach the age of twenty-one, notwithstanding the use of the words "the whole of the property" must be limited to Henry's half, passing under the contingency, not only because that is the only subject of the clause, but also because a larger application of those words would be contrary to the prior gift in absolute fee to appellant and to Henry subject to the specified contingency. The contingency has not in fact happened; Henry is still living, and all that is coming to appellant is her half under the first devise. This she is entitled to have absolutely without security.

The other assignments of error cannot be sustained. The judgments in favor of Henry were standing unimpeached on the records of the common pleas. They were not in litigation, for though a rule had been obtained to open them, it had been discharged. The common pleas had acted on the rule and the litigation was at an end. The orphans' court had no authority to reopen it.

The refusal to disallow commissions to the administrator and the amount of his counsel fee were matters which the court below considered carefully, and which were largely in their discretion. It is not claimed that the counsel fee is more than the counsel was entitled to, but that the services were rendered

principally on behalf of the administrator personally as a creditor, and not on behalf of the estate. The court below had a better opportunity than we have to investigate and determine such matters, and we see no reason to doubt the correctness of their conclusion.

So much of the decree as required security to be entered by appellant is reversed, and distribution directed to be made to her absolutely. Costs of this appeal to be paid by appellee, Henry Schmidt.