## State Hospital for Criminal Insane *v.* Consolidated Water Supply Co., Appellant.

*Res adjudicata—Public policy—Case stated—Relevant facts and issues—Judicially ascertained—Maxims—Interest reipublicæ ut sit finis litium—Law and equity.*

1. A formal judicial determination of a governing point at issue in a case-stated is conclusive between the parties.

2. A case-stated, being in the nature of a special verdict, is a judicial ascertainment of facts, which, after affirmance of a judgment thereon, is conclusive between the parties to the suit, on the doctrine of "interest reipublicæ ut sit finis litium." This is equally true of all relevant facts and issues directly connected with the subject-matter of a litigation which might properly have been offered in the prior suit; but only such facts and issues, embraced in the case-stated, as have been acted upon, in the sense that they

may be said to be "judicially ascertained" or determined, can be held res adjudicata in a subsequent litigation between the same parties, over the same subject-matter.

3. The purpose underlying res adjudicata is more than to serve simply the interest of one who may see fit to invoke the rule; it is a measure of public policy based on the principle that the general welfare requires litigation not to be interminable.

4. The courts, for the economy of time belonging to all litigants, will not consider a point which has already been adjudicated between the same parties; and the circumstance that the first suit was at law and the next in equity is not material in the application of this rule.

*Res adjudicata—Appeals—Right of appellee to raise question of res adjudicata on appeal—Failure to except no bar—Stare decisis—Property right—Prior decision of subordinate appellate court.*

5. If the facts found by a chancellor show that a controlling point in the case had been judicially determined in previous litigation under such circumstances as to make that particular point or issue res adjudicata, where the court below, although refusing a plea to this effect, nevertheless decides the point involved, on the merits, and enters final judgment thereon in favor of the party who contended for the circumstances of the former adjudication, there is no rule or principle which debars the appellee, on an appeal by his antagonist, from successfully suggesting to the appellate court that, in addition to the reasons given by the court below for its final judgment, such judgment is also sustainable on the ground of res adjudicata.

6. In such case it is immaterial that the appellee did not in the court below except to the chancellor's refusal of its res adjudicata contention. Equity Rule 67, in terms, simply requires an exception taken to all matters which an appellant desires to assign as error; it goes no further.

7. The doctrine of res adjudicata has been enforced, to affirm or reverse a judgment in part when offered for the first time in the appellate court.

8. Although it is a general rule of practice that a point not presented to the court below cannot be urged, on appeal, to obtain a reversal, still it is equally well established that a correct decision will be sustained for any reason which supports it, particularly where the ground was formally presented to the trial court, even though not acted on there.

9. While decisions of subordinate appellate courts are not stare decisis in a higher court, yet, when all other circumstances essential to the application of the doctrine of res adjudicata exist,

such decisions will be treated, in a subsequent suit between the same parties, as conclusive. Any other doctrine would be intolerable in cases involving title to property, where, after the first judicial determination, large expenditures might be incurred for improvements, all of which could be swept away by an adverse decision, on the same point, in subsequent litigation, over the same subject-matter, between the same parties.

10. When a court of ultimate jurisdiction feels compelled to depart from a prior adjudication of another court of appeal, it of course has the power to do so, just as it may overrule one of its own judgments, but that right will be exercised only where the prior decision presents palpable error committed on a controlling point at issue.

11. Where, in a suit in equity for an injunction to restrain the unlawful appropriation of water from a reservoir, it appears that in a previous suit at law between the same parties, the Superior Court, on an appeal from a judgment at law on a case-stated, sustained the contention of plaintiff, the Supreme Court on an appeal from a decree for plaintiff in the equity suit, will not consider matters of law and fact relating to the title to the water in controversy, where such matters might have been, but were not, incorporated in the case-stated in the former suit, and the court below, in the equity suit, found they were immaterial and of no moment.

*Equity—Damages—Water—Property in—Use of water—Complete relief.*

12. Where a bill in equity charges that defendant, a water company, had unlawfully opened a dam and allowed the water to escape from a certain reservoir owned and used by plaintiff, and prays for an injunction and damages, the chancellor in granting an injunction may also award damages under the well established doctrine that, when equity takes cognizance of a case, it will give complete relief.

13. In such a case, the award of damages made by the chancellor will be sustained, where the evidence showed that during the months in which the defendant company illegally appropriated plaintiff's supply, it sent bills to the plaintiff, charging it for water approximately at the rate adopted by the chancellor; that defendant opened the dam and drained off four-fifths of the reservoir's contents; that its capacity was fixed by survey and four-fifths thereof amounted to the given number of gallons with which the chancellor charged defendant. The water actually stored in the reservoir was the private property of plaintiff, and as such, had a monetary value.

Argued February 23, 1920.  Appeal, No. 158, Jan. T., 1920, by defendant, from decree of C. P. Wayne Co., June T., 1917, No. 1, on bill in equity in case of State Hospital for the Insane v. Consolidated Water Supply Co.  Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ.  Affirmed.

Bill in equity for injunction and for damages.  Before SMITH, P. J., specially presiding.

The court entered a decree in accordance with the prayers of the bill, and awarded damages in the sum of $3,600.  Defendant appealed.

*Error assigned,* among others, was decree of court.

*Henry A. Knapp,* of *Knapp, O'Malley, Hill & Harris,* for appellant.—The question of res adjudicata was decided against appellee in the court below and no exception was filed thereto by appellee and, of course, the point is not raised by any assignment of error in this appeal, and, we respectfully submit, is not before the court.

The binding effect of a former adjudication depends upon the identity of the rights involved, not on the evidence, nor on the arguments used: Myers v. Kingston Coal Co., 126 Pa. 582; Schriver v. Eckenrode, 87 Pa. 213; Lewis & Nelson's App., 67 Pa. 153; Forcey's App., 106 Pa. 508; Watt's App., 158 Pa. 1; Pittsburgh C. Co. v. West Side B. R. R., 227 Pa. 90; Funk v. Young, 254 Pa. 548; Wright v. Weber, 17 Pa. Superior Ct. 451; Raisig v. Graf, 17 Pa. Superior Ct. 509; Kapp v. Shields, 17 Pa. Superior Ct. 524.

In cases involving the concurrent jurisdiction of law and equity, only that is res adjudicata which was claimed by plaintiff in his first action and which could have been tried: Moser v. Trust Co., 3 Atl. 454; Head v. Meloney, 111 Pa. 99; Schwan et al. v. Kelly, 173 Pa. 65; Moser v. Phila. H. & P. R. R., 233 Pa. 259.

*G. Von Phul Jones,* with him *Clarence Balentine,* for appellee.—The appellate court will not reconsider matters decided on a former appeal: Thaler Bros. v. Greisser C. Co., 229 Pa. 512; Welker v. Hazen, 247 Pa. 122, 123; McMahon's Est., 215 Pa. 10; Creachen v. Bromley Bros., 214 Pa. 15.

No exceptions were required of appellee: Powell's Est., 138 Pa. 322; Fullerton's Est., 146 Pa. 61; Johnston's Est., 222 Pa. 514; Central G. Trust, etc., Co. v. White, 206 Pa. 611.

Even an appellant can assign for error fundamental errors without exception having been taken: Bean's Road, 35 Pa. 280; O'Hara Twp. Road, 152 Pa. 319.

OPINION BY MR. JUSTICE MOSCHZISKER, April 12, 1920:

The State Hospital for the Criminal Insane, located in Wayne County, Pennsylvania, filed a bill in equity complaining that, on September 8, 1917, the Consolidated Water Supply Company, defendant, had unlawfully opened a dam and allowed the water to escape from a certain reservoir, owned and used by plaintiff for institutional purposes; the bill prayed for an injunction and damages. Defendant filed a cross bill, and all matters sought to be put at issue were duly brought to trial. The original bill was sustained, cross bill dismissed, and the hospital awarded relief as prayed for; the water company has appealed.

The ultimate and controlling issue raised by the pleadings concerns the ownership of the water contained in what shall be hereinafter referred to as "Reservoir 7," both parties claiming through a common grantor. The identical point—as to ownership—was directly at issue in a prior suit at law between the same parties, concerning the same subject-matter, wherein a final judgment was rendered in favor of the present plaintiff by the Superior Court (see Consolidated Water Supply Co. v. State Hospital, etc., 66 Pa. Superior Ct. 610, 623), that tribunal stating, inter alia: "It is evident from a

consideration of all the facts that the grantor did not intend by its conveyance to the water company to lease the right to use the water from the reservoir [7] now owned by the [hospital]."

The matter just quoted is the final governing conclusion, after an extended consideration by the Superior Court of a case-stated, embracing all the material facts now before us; but the court below, instead of sustaining plaintiff's contention that the legal right to the water in controversy had been already determined at law, and, hence, all required of it was to prove defendant's invasion of that right and the damages suffered thereby, entered upon an elaborate trial of the same issues as those adjudicated in the former action, together with certain other attending issues of fact, which were relevant to, and might have been included in, the case-stated. This procedure resulted, however, in the conclusion that, "at the time of the acts complained of, the hospital was, and has since continued to be, and now is, the absolute owner of Reservoir 7 and the waters ponded therein"; which for all material purposes is exactly similar to the decision reached in the prior suit.

The facts brought forth on both suits, essential to an understanding of our present consideration, are these: Prior to 1867, the Delaware & Hudson Company owned the entire acreage over which a stream called Racket brook flowed, and, at that time, when no other riparian rights were involved, it built the dam which formed Reservoir 7, as well as creating two additional water basins, by other dams, at different locations on its lands. November 1, 1867, the company executed a long-term lease to a predecessor in title of the present defendant, for one of these reservoirs other than 7; but this lease— as properly found by the court below—did not give to the lessee all the water of Racket brook—it simply conferred "the right to take water from said brook for supplying said reservoir" (that leased to defendant's predecessor), which, we may remark incidentally, is located

lower down the stream than No. 7. The lessor continued to use Reservoir 7 for its exclusive purposes to the year 1910; but, in 1912, it deeded 50 acres, "upon which was and is located the entire dam" of that receptacle, to the Commonwealth of Pennsylvania, this land adjoining 613 other acres (on which plaintiff's institution is erected) acquired by the Commonwealth from the same grantor in 1907. The 1912 deed also conveyed "all the right, title and privilege" of the grantor to maintain the water supply here in controversy, the grant in that respect being identified as "all the rights reserved" in a previous deed of the Delaware & Hudson Company to "Francis Walcott," i. e., the unrestricted right to maintain Reservoir 7, "flowage on said lands, enjoyment in use of the water therein, and access to and from same"; but the deed reserves to the grantor the right to use the contents of this reservoir, and likewise excepts such rights in the premises, "if any," as the grantor "leased, November 1, 1867," to defendant's predecessor in title.

On these facts, and others which we deem it unnecessary to detail in this opinion, the court below concluded, as hereinbefore stated, that plaintiff had an absolute right to all the water in Reservoir 7, saying in substance that all such water was being used strictly for institutional purposes, and that there had been no departure by plaintiff "from compliance with the rule for the return of surplus water, if any, to the original channel" of the stream; further, that plaintiff's rights were subject only to those of its grantor, as reserved in the last mentioned deed, and defendant's claim that it had acquired prescriptive ownership in the waters of Racket brook and Reservoir 7 was "not supported by evidence," any use it had made thereof being "permissive only." Finally, concerning the reservation in the 1912 deed of such rights, "if any," as the grantor had previously "leased" to defendant's predecessor in title, the court below properly found "it did not lease the right to use

the water from Reservoir 7"; which is all that need here be said upon this point.

Defendant introduced evidence as to its acquirement of certain rights in Racket brook, which had been appropriated by three other corporations. It is not necessary, in this connection, to decide whether or not plaintiff's supply could be taken for other public purposes (see discussion on private water supplies in the opinion of President Judge Rice, Gring v. Sinking Spring Water Co., 7 Pa. Superior Ct. 63), since we are not convinced the court below erred in finding that no proper condemnation of the water in controversy had been shown, or in holding that, for this reason, the evidence in relation to the alleged appropriations thereof was immaterial. We also agree that the facts found, at the request of defendant, as to the water taken from Reservoir 7 being needed by that company to fulfill its corporate purposes, are immaterial, since no legal title thereto was shown.

We shall not further examine the matters of law or fact involved in the determination of the title to the water in controversy; for, as previously said, all the issues which enter into the determination of that governing point (Allen v. Int. Textbook Co., 201 Pa. 579, 582; Kilheffer v. Herr, 17 S. & R. 319, et seq.) were adjudicated in the previous action at law, except the two matters referred to in the immediately preceding paragraph, both of which were appropriate to, and, if defendant desired them passed upon, should have been incorporated in the case-stated then brought into court. Moreover, as noted in the last mentioned paragraph, and found by the court below, the two new, and subordinate, issues,—on the point of title to the water—raised in the present case, when examined, prove to be of no moment.

The fact that the previous action was in form a case-stated, makes no difference so far as the question of res adjudicata is concerned; the formal judicial determination of a governing point at issue in a case-stated is conclusive between the parties. In Wheeling, etc., Co.'s

App., 1 Penny. 360, 363, we held that a case-stated, being in the nature of a special verdict, is "a judicial ascertainment of facts," which, after affirmance of a judgment thereon, is conclusive between the parties to the suit, on the doctrine of "interest reipublicæ ut sit finis litium." This is equally true of all relevant facts and issues directly connected with the subject-matter of a litigation which might properly have been offered in the prior suit (Kilheffer v. Herr, 17 S. & R. 319, 320) : but only such facts and issues, embraced in the case-stated, as have been acted upon, in the sense that they may be said to be "judicially ascertained" or determined, can be held res adjudicata in a subsequent litigation between the same parties, over the same subject-matter—which is the case at bar, in so far as the title to the water of Reservoir 7 is concerned. For a discussion of relevant governing general principles see Morrett v. Fire Association of Phila., 265 Pa. 9, 12, 13.

The purpose underlying res adjudicata is more than to serve simply the interest of one who may see fit to invoke the rule; it is a measure of public policy, based on the principle that the general welfare requires litigation not to be interminable : Mayor et al. of City of Paterson v. Baker, 51 N. J. Eq. 39, 59; Walsh's Est., 80 N. J. Eq. 565, 570. The courts, for the economy of time belonging in common to all litigants, will not consider a point which has already been adjudicated between the same parties (Wheeling, etc., Co.'s App., 1 Penny. 360, 363; 15 R. C. L. 954; McMichael v. Horay, 90 N. J. L. 142, 145; Ludwick v. Penny, 158 N. C. 104, 110; Womach v. City of St. Joseph, 201 Mo. 467, 476, et seq.) ; and the circumstance that the first suit was at law and the next in equity is not material in the application of this rule: Kilheffer v. Herr, 17 S. & R. 319, 320; Megahey v. Farmer's, etc., Assn., 215 Pa. 351, 352; Browarsky's Est., 252 Pa. 35, 41; Schmidt's Est., 185 Pa. 579, 585; Shively v. Mining Co., 5 Cal. App. 236, 242; Trust Co. v. Doman, 93 N. W. 1022, 1024. "Public policy and the

interest of litigants alike require that there be an end to litigation, and the peace and order of society demand that matters distinctly put in issue and determined by a court of competent jurisdiction as to parties and subject-matter, shall not be retried between the same parties in any subsequent suit in any court. The doctrine of res adjudicata not only puts an end to strife, but produces certainty as to individual rights and gives dignity and respect to judicial proceedings": 15 R. C. L. 954-5.

That appellee did not except to the chancellor's refusal of its res adjudicata contention, is of no importance here. If the facts found by a chancellor show that a controlling point in the case had been judicially determined in previous litigation, under such circumstances as to make that particular point or issue res adjudicata, where the court below, although refusing a plea to this effect, nevertheless decides the point involved, on the merits, and enters final judgment thereon in favor of the party who contended for the conclusiveness of the former adjudication, there is no rule or principle which debars the appellee, on an appeal by his antagonist, from successfully suggesting to the appellate court that, in addition to the reasons given by the court below for its final judgment, such judgment is also sustainable on the ground of res adjudicata.

Even in the days of special pleading, one was not always required specially to plead res adjudicata. In Kilheffer v. Herr, 17 S. & R. 319, 322, where, as here, plaintiff relied upon the former adjudication of a controlling fact, contending (again as here) he ought to be obliged only to prove his damages, we said, in sustaining this position: "It is difficult to assign a reason why the [prior] judgment should not have the same conclusive operation, if given in evidence, without pleading, as it would be admitted to have, if pleaded in bar."

Equity Rule 67, in terms, simply requires an exception taken to all matters which an appellant desires to assign as error; it goes no further. In a case almost exactly

like the present one—so far as it relates to the failure
of appellee to take an exception in the court below—the
plea of res adjudicata was sustained to affirm a decree
in equity (Brady v. Parish of Ascension, 26 La. Ann.
320, 321); and the doctrine has been enforced, to affirm
or reverse a judgment in part when offered for the first
time in the appellate court: Rohm v. Jallans, 134 La.
913, 917; McMichael v. Horay, 90 N. J. L. 142, 145, 146.

Although, of course, it is a general rule of practice
that a point not presented to the court below cannot be
urged, on appeal to obtain a reversal, still it is equally
well established that a correct decision will be sustained
for any reason which supports it, particularly where, as
here, the ground was formally presented to the trial
court, even though not there acted upon: Corgan v. Geo.
F. Lee Coal Co., 218 Pa. 386, 392; Brew v. Hastings, 206
Pa. 155, 162; Derry Council, No. 40, v. State Council,
197 Pa. 413, 420; Com. to use v. Wing, 253 Pa. 226, 230;
2 R. C. L. 189.

It must be kept in mind that the decree of the Su-
perior Court, in Consolidated Water Supply Co. v. State
Hospital, supra, is between the same parties as those
engaged in the present case, wherein it differs from
Hart's App., 8 Pa. 32, 37, and Gibson v. Rowland, 35
Pa. Superior Ct. 158, 165; furthermore, it is pleaded
not as stare decisis but as res adjudicata, the former
having to do with the binding effect of legal principles
and the latter with the conclusiveness of prior judicial
findings based upon the same facts as those involved in
a pending controversy, between the same parties over
the same subject-matter. While decisions of subordi-
nate appellate courts are not stare decisis in a higher
court, yet, when all other circumstances essential to
the application of the doctrine of res adjudicata exist,
such decisions will be treated, in a subsequent suit be-
tween the same parties, as conclusive: Thaler Bros. v.
Greisser Construction Co., 229 Pa. 512, 519, 520. Any
other doctrine would be intolerable, especially in cases

like the one at bar, involving title to property, where, after the first judicial determination, large expenditures might be incurred for improvements, all of which could be swept away by an adverse decision, on the same point, in subsequent litigation, over the same subject-matter, between the same parties: 15 R. C. L. 954-5.

When, under circumstances such as just described, a court of ultimate jurisdiction feels compelled to depart from a prior adjudication of another court of appeal, it of course has the power to do so, just as it may overrule one of its own judgments, but that right will be exercised only where the prior decision presents palpable error committed on a controlling point at issue. No such condition confronts us in the present instance. On the contrary, the governing issue—concerning the title to the water in controversy—was correctly decided before; it is now res adjudicata, and appellee is in no sense barred from so contending. This leaves only one other matter for consideration, which necessarily could not have been embraced in the prior suit, namely, the propriety of the award of damages to the present plaintiff and the sufficiency of the evidence offered to sustain it.

The award was proper under the well established doctrine that, when equity takes cognizance of a case it will give complete relief; and we see no merit in appellant's complaint that the evidence is insufficient to prove the amount of the damages. It appears that, during the months in which defendant company illegally appropriated plaintiff's supply, the former sent bills to the latter, charging it for water approximately at the rate adopted by the chancellor; that defendant opened the dam and drained off about four-fifths of the reservoir's contents; that its capacity was fixed by survey, and four-fifths thereof amounted to the given number of gallons with which the chancellor charged defendant. These proofs amply sustain the award of damages, and, on the facts at bar, the court below rightly decided that

the water actually stored in Reservoir 7 was the private property of plaintiff (Gould on Waters—3d ed., 1900— p. 469; Ferens v. O'Brien, 11 Q. B. D. 21, 22); as such, it had monetary value.

This opinion has already run to undue length; we shall not attempt to pass specifically upon the forty-one assignments of error, none of which presents reversible error.

The decree is affirmed at cost of appellant.