## Tasin et al. v. Bastress, Appellant.

*Res adjudicata—Parties—Subject-matter—Compromise — Consideration—Public policy.*

1. Facts found in a suit are res adjudicata in a later suit, growing out of the same subject-matter, if all the parties in the latter were, though with others, parties to the former.

2. Facts found in a prior suit are not res adjudicata in a later one, though growing out of the same subject-matter, if in the latter there are plaintiffs not appearing in the former, unless the additional parties are merely nominal ones, not personally interested in the litigation.

3. The purpose underlying res adjudicata is more than to serve simply the interest of one who may see fit to invoke the rule; it is a measure of public policy, based on the principle that the general

welfare requires that matters distinctly put in issue, and determined by a court of competent jurisdiction as to parties and subject-matter, shall not be retried between the same parties in any subsequent suit in any court.

4. Where, without fraud, the parties have compromised a doubtful or unliquidated claim, its validity cannot be questioned in a suit on the agreement of compromise. Its settlement is ample consideration for the promise.

5. Where the promisor, in an agreement of compromise, agrees with the promisee to pay or deliver something to one who is merely a donee, the latter may himself maintain an action upon the promise.

Argued May 11, 1925. Appeals, Nos. 173, 174, 280, 281 and 282, Jan. T., 1925, by John E. Bastress in Nos. 173 and 174, by Malcolm C. Farrow in No. 280, by B. W. Kriner et al. in No. 281 and by J. H. Reed et al. in No. 282, on judgments for plaintiffs in Nos. 173 and 174 and on judgments for defendant in Nos. 280, 281 and 282, on trial by the court without a jury in C. P. Northumberland Co., Sept. T., 1916, Nos. 241-5, in case of Emanuel Tasin et al. v. John E. Bastress. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Assumpsit, tried by the court without a jury. Before HECK, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Judgment for plaintiffs in Nos. 173 and 174, and for defendant in 280, 281 and 282.

Plaintiffs and defendant respectively appealed.

*Errors assigned* were, inter alia, the respective judgments, quoting record.

*Owen J. Roberts,* with him *Voris Auten* and *Charles C. Lark,* for appellant.—Faust was illegally added as a plaintiff: Meason v. Kaine, 67 Pa. 126; Meredith v. Bank, 275 Pa. 314; Blymire v. Boistle, 6 Watts 182; Adams v. Kuehn, 119 Pa. 76.

Walter and Faust cannot sue as trustees: Adams v. Kuehn, 119 Pa. 76; First M. E. Church v. Isenberg, 246 Pa. 221.

The cause of action was completely changed: Clement v. Com. ex rel., 95 Pa. 107; Sweeney v. Houston, 243 Pa. 542; Goldberg v. Friedrich, 279 Pa. 572; Garman v. Glass, 197 Pa. 101.

Amendments that change the nature of the action cannot be made after the statute of limitations has run: Clement v. Com. ex rel., 95 Pa. 107; Noll v. Swineford, 6 Pa. 187; Comrey v. Twp., 202 Pa. 442; LaBar v. R. R., 218 Pa. 261; Bender v. Penfield, 235 Pa. 58; Coyne v. Ry., 227 Pa. 496; Grier v. Northern Assurance Co., 183 Pa. 334; Mays v. Gas Co., 268 Pa. 325; Card v. Pork Co., 253 Pa. 575.

*C. M. Clement* and *Geo. B. Reimensnyder,* for appellees.—Brill v. Brill, 282 Pa. 276, is decisive of the issues raised.

OPINION BY MR. JUSTICE SIMPSON, June 27, 1925:

The court below tried these five cases together, without a jury; judgments for plaintiffs were entered in two of them, and for defendant in the other three. Each of the losing parties prosecutes a separate appeal. But one opinion was delivered below, and one will suffice here.

In compromise of a suit, brought in the City of New York, by L. S. Walter and W. B. Faust against the defendant in these cases, he agreed with them that, if they would discontinue the suit, he would, inter alia, pay an outstanding indebtedness of $36,000,—which plaintiffs owed to certain financial institutions, and which was secured by a second mortgage, of doubtful value, on certain property of the Kriner Realty Company,—in one of three ways, (a) "he would endeavor to place a mortgage upon the lands of the Kriner Realty Company of sufficient amount to pay and discharge said notes; or, if

that could not be done, (b) he would endeavor to sell the lands of the Kriner Realty Company......for a price satisfactory to the company, and out of the money realized from the sale would pay the notes; or (c) he would himself purchase the said lands of the Kriner Realty Company at a price satisfactory to the company and pay the notes." In accordance with this agreement Walter and Faust discontinued their New York suit (which was for a much larger amount than the liability assumed by defendant), but he only partially complied with his promise. For some time after the settlement was made, he tried ineffectually to mortgage or sell the property referred to; on his ultimate failure to do so, the parties, liable on each note, brought a separate suit in their own names, claiming that the agreement of compromise had been made for their benefit.

There were six such suits. One was by Emanuel Tasin, W. W. Robertson, L. S. Walter, J. H. Reed, K. I. Hopwood, B. W. Kriner, and J. H. Bird against defendant, was tried before a jury, verdict and judgment were entered in favor of plaintiffs, and the judgment was affirmed by this court: Tasin v. Bastress, 268 Pa. 85. As between the parties to it, the judgment therein conclusively determined that the agreement above referred to was made for the benefit of those liable on the $36,000 of notes, that the suit was on one of these notes, and that defendant breached his agreement. These conclusions of fact thus became res adjudicata in all other actions between the same parties, growing out of the same subject-matter. The present suits are upon the rest of the obligations which defendant promised to pay in consideration of the compromise of the New York suit.

In three of them, all the plaintiffs therein were, with others, also plaintiffs in the suit which was affirmed by this court. Under such circumstances, no reason exists why res adjudicata should not conclusively determine the rights of the litigants in these three suits, if, as is admittedly the case, the obligations sued on were also

part of the $36,000. It is not necessary that exactly the same parties shall appear in both cases; it is sufficient if all those in the later case were parties in the former one. In 15 R. C. L. 1012, where the applicable rule of law is tersely stated, it is said: "While in order that a judgment may operate as res judicata there must be identity of parties in the two proceedings, yet it is not generally deemed essential that all the parties to both proceedings be identical, and a judgment is conclusive of the issue involved in a controversy as between the parties and those standing in privity with them, although in the action in which it is pleaded some only of the parties are litigants." Among the cases, cited as supporting this conclusion, are Thompson v. Roberts, 24 Howard 233, 241, and Green v. Bogue, 158 U. S. 478, in the first of which it is well said that "A contrary doctrine would sacrifice a wholesome principle of law to a mere technical rule having no foundation in reason: making a distinction where there is no difference." To the same effect is Follansbee v. Walker, 74 Pa. 306.

In another of the present suits, some of the plaintiffs were also plaintiffs in the case affirmed in 268 Pa. 85, and some were not. A great diversity of opinion exists, as to what extent, if at all, res adjudicata applies in that class of cases. In 34 C. J. 996, the conclusion reached, as the result of a consideration of the numerous cases cited in the foot notes, is stated as follows: "Where both the party offering a judgment as an estoppel and the party against whom it is so offered were parties to the action in which the judgment was rendered, it is no objection that the action included some additional parties who are not joined in the present suit, or that there are additional parties in the present action. But this does not make the judgment admissible as evidence either for or against parties to the pending action, who were not parties to the action in which it was rendered. And the estoppel arising from a judgment does not apply in a subsequent suit where a new plaintiff comes in,

seeking to litigate matters not determined in the former suit, although otherwise the parties are the same."

If the qualifying clause,—"seeking to litigate matters not determined in the former suit,"—were omitted, as, on principle we think it should have been, we would have the exact situation appearing here. If the new plaintiff is a mere nominal party, not personally interested in the litigation, res adjudicata applies, for the benefit of the real parties, whether the matters adjudicated were or were not contested in the former suit, if they could have been there litigated and would, in that event, have controlled the result. In the particular appeal now under consideration, plaintiffs' action is a joint one; all must recover on it, or it must wholly fail. The statement of claim alleges a liability of defendant to all the plaintiffs. Under these circumstances, no evidence is admissible which does not tend to prove the joint liability, and the record in the prior suit does not do this. It follows that as to this fourth case, now under consideration, and as to the fifth, where the sole plaintiff was not a party to the original suit, res adjudicata does not apply, and the question of liability is at large.

On the three appeals where res adjudicata does apply, that question was not raised in or determined by the court below, yet, in view of the order we intend to enter, what we said, by the present Chief Justice, in State Hospital for the Criminal Insane v. Consolidated Water Supply Co., 267 Pa. 29, 37, is most appropriate: "The purpose underlying res adjudicata is more than to serve simply the interest of one who may see fit to invoke the rule; it is a measure of public policy, based on the principle that the general welfare requires litigation not to be interminable: Mayor et al. of City of Paterson v. Baker, 51 N. J. Eq. 49, 59; Walsh's Est., 80 N. J. Eq. 565, 570. The courts, for the economy of time belonging in common to all litigants, will not consider a point which has already been adjudicated between the same parties (Wheeling, etc., Co.'s App., 1 Penny. 360, 363;

15 R. C. L. 954; McMichael v. Horay, 90 N. J. L. 142, 145; Ludwick v. Penny, 158 N. C. 104, 110; Womach v. City of St. Joseph, 201 Mo. 467, 476 et seq.) ......
'Public policy and the interest of litigants alike require that there be an end to litigation, and the peace and order of society demand that matters distinctly put in issue and determined by a court of competent jurisdiction as to parties and subject-matter, shall not be retried between the same parties in any subsequent suit in any court. The doctrine of res adjudicata not only puts an end to strife, but produces certainty as to individual rights and gives dignity and respect to judicial proceedings': 15 R. C. L. 954-5."

It is frankly admitted by defendant that, on these appeals, he cannot successfully challenge the finding of the court below, that the compromise agreement sued on was in fact made. He claims, however, since that court also found, under the proofs educed, that defendant was not indebted to Walter and Faust at the time he entered into that agreement, it must, so far as concerns these cases, be regarded as settled that there was no legal consideration for the agreement, and hence no suit can be maintained on it. The court below did not agree with this contention, nor do we. Indeed, in the absence of fraud, which was neither averred nor proved, no evidence should have been admitted on this point, since the purpose of compromising a doubtful or unliquidated claim, is to avoid a litigation of the issue raised in the suit which was compromised, and hence the settlement of that suit furnishes ample consideration for the new agreement (13 C. J. 349; Miller's Est., 279 Pa. 30; Tasin v. Bastress, supra) ; this has been the rule with us since Hamaker v. Eberley, 2 Binney 505.

We cannot assent to the conclusion reached by the trial judge, on the final substantial question involved, viz: Had plaintiffs the right to sue in their own names, on the agreement of compromise? Misapprehending our decision in Blymire v. Boistle, 6 Watts 182, and the

cases in its train, he held that plaintiffs could not thus sue because they were strangers to the contract itself, and to the consideration which moved to defendant. Because of this conclusion, he entered judgment for defendant in three of the cases, where neither Walter nor Faust appeared as plaintiffs, and, in the other two, where Walter was a plaintiff but Faust was not, he added the name of the latter, struck out the names of all the other parties except Walter, and then entered judgments in those two suits in favor of Walter and Faust. This action was taken by the trial judge, of his own motion, in the absence of and without the request of any of the parties, and without giving defendant an opportunity to be heard. While a court may, and, when justice requires it, should suggest amendments of the record, it had no right where, as here, the parties are sui juris and not wards of the court, to itself make such amendments, without a request of some of the parties interested, and not even then, without giving the opposite party a hearing. The litigation belongs to the parties and not to the court; the latter may sustain or dismiss it, under the pleadings filed and proofs submitted by them, but beyond this he cannot properly go, without an application or consent, so long as the parties are legally competent to act for themselves. Defendant assigns as error the action of the court in making the amendments in the way it did, and this complaint must be sustained.

If the reason given by the court below for refusing a recovery by plaintiffs in their own names, furnished the conclusive test of their right in that regard, then not only was Tasin v. Bastress, supra, improperly decided, but so likewise were all our other cases in which the beneficiary was allowed to sue in his own name. True, in most of them it was assumed, or the fact was that a fund was left in the hands of the particular defendant, to enable him to pay the obligations for which he thus became liable; but this did not make the plaintiffs in

those cases other than strangers to both the contract and the consideration moving to the defendants. Indeed, if the conclusion of the court below is correct, it would be difficult to find cases in which the beneficiary would be allowed to sue, for he is always a stranger to the contract, and, if he furnishes the consideration moving to the promisor, then the promise may well be said to have been made to the promisee, as agent of the beneficiary, thus, in legal effect, being made to the beneficiary himself: Hubbert v. Borden, 6 Wh. 79.

The general question at issue has long been the cause of many conflicting decisions, and probably will continue to be so until it is settled, if it can be, by legislation. Quite generally, the subject-matter has been divided into two classes, (1) where the beneficiary is a donee, the promisee being under no legal liability to him; and (2) where the beneficiary is a creditor of the promisee, in which case the fulfillment of the promise would relieve the promisee of his obligation to pay the beneficiary. In some courts of last resort, different rules are applied in the two classes of cases, but there are, at the present time, only a few jurisdictions which hold that the donee beneficiary cannot sue in his own name: Corbin's American Edition of Anson on Contracts, page 339; 1 Williston on Contracts, section 368. The reason for this conclusion rests in the fact that, as the promisee would lose nothing by a breach of the contract, he could never recover more than nominal damages, and, hence, if the beneficiary could not sue, the promisor could retain the fruits of the contract without fulfilling its obligations. In view of this it necessarily follows that where, as here, the beneficiary is the only one who can be substantially benefited by such a promise, he should be allowed to recover in some form of action, (Kountz v. Holthouse, 85 Pa. 235; Hostetter v. Hollinger, 117 Pa. 606, 611; Edmundson's Est., 259 Pa. 429, 435; McBride v. Western Pa. Paper Co., 263 Pa. 345, 349; Depuy v. Loomis, 74 Pa. Superior Ct. 497) and hence, in certain jurisdic-

tions, equity will compel specific performance of it, when requested by the beneficiary so to do: 1 Williston on Contracts, sections 358, 359; Corbin's American Edition of Anson on Contracts, page 350. With us, equity originally had to be, and still is, administered in courts of law, by actions of assumpsit, and no reason appears why it may not be in this class of cases. Indeed, it always has been.

Turning then to the records, we find that they are barren of either averment or proof that Walter and Faust were liable to these plaintiffs for the indebtedness defendant agreed to pay. True, he asserts over and over again, in each of his elaborate affidavits of defense (which cover about 94 printed pages each), that Walter and Faust were *morally* liable to plaintiffs, but the reasonable inference from these statements is that he could not properly assert that there was a *legal* liability. It is true, also, that Walter is one of the beneficiaries in several of the cases, but he cannot, as an individual, be a creditor of himself as an individual, and there is no pretence that he was acting in any other capacity. Moreover, he was not a creditor of himself and Faust jointly, —which defendant avers, and the court below finds, was the only capacity in which the two acted, and would have been the sole basis of recovery if, as promisees, they had sued on the agreement. Blymire v. Boistle, supra, and the other authorities relied on by the court below, were creditor beneficiary cases, in which the promisee, by the fulfillment of the promise made to him, would be relieved from his obligation to the beneficiaries, and, therefore, had a real financial interest to enforce against the promisor, if the agreement to pay the beneficiaries was breached.

Even in this latter class of cases, although the decisions here and elsewhere are not uniform, "the American jurisdictions are but few which do not allow the creditor a direct action at law against the promisor": 1 Williston on Contracts, section 381. In this State, we

have usually adopted the other view, but a movement in accordance with the general opinion would seem to be at least foreshadowed by Brill v. Brill, 282 Pa. 276. In that case, the mother of a boy and its alleged father (this relation being somewhat "cautiously" questioned by the latter, with the result that "the element of consideration in the supposed love and affection of a father for his child is eliminated from the case") entered into an agreement by which the latter was, at intervals, to pay to the former, stipulated sums of money, a specific part of which was to be for the mother's benefit, and another specific part for the education and support of the boy. Subsequently, the mother, for a valuable consideration, paid to her by the alleged father, executed and delivered to him a release from all liability, as well to the boy as to herself. Later, the boy, by his next friend, sued on the agreement, and was permitted to recover because it thereby appeared that, so far as concerned the sums to be paid for the boy, they were *primarily* for his benefit, and hence it was proper to bring the suit in his own name, though the contract, made by the mother, was in relief of her duty to educate and support her illegitimate son, and hence she had a direct personal interest in it. The fear suggested in the argument of that case, and in the opinions in other creditor beneficiary cases, that to hold the latter entitled to sue in his own name, might unjustly subject the promisor to two suits, since the promisee has a personal interest in the payment to be made, and hence ought to be entitled to enforce it, is more imaginary than real. If the rule of Brill v. Brill, supra, is applied, the courts will always decide, from the agreement and the attending circumstances, who was *primarily* intended to be benefited by it, and, as they so determine, will sustain or defeat the claim, no matter which of the parties brings the suit: 6 R. C. L. 886, 887. Of course, in this class of cases, presumptively the agreement is made for the benefit of the promisee, but if it clearly appears that the beneficiary

was the one primarily to be benefited, there is no substantial reason why it should not be so adjudged. It is usually conceded,—though possibly not universally,—that if a promise expressly says the payment is to be made to the beneficiary, he can sue upon it, even though its fulfillment would also benefit the promisee. There would seem to be no valid reason why this should not be the case also, if the true construction of the agreement leads to the same end, even though it may not be so plainly expressed.

Other reasons are urged by plaintiffs as showing that the parties intended, by the agreement of compromise, to give to the beneficiaries a right of action in their own names; but it is not necessary to weigh them now, since we will not enter final judgment in any of the cases. Doubtless those reasons will receive due consideration, whenever, if at all, it becomes necessary to take them into account. The records, as they now exist, convince us that the vital points, upon which we have shown the decision of the cases turns, were not adequately presented to the trial judge; and it may be that defendant did not produce some of the evidence, available for his defense, because it was not then necessary to do so. Justice demands, in view of this possibility, that the cases shall be re-tried in the light of what we have said in this opinion.

Each of the five judgments of the court below is reversed, the amendments to the names of the plaintiffs are set aside, each party is hereby authorized to amend his pleadings in such manner as is allowed by law, and, with or without such amendments, to produce such other legal evidence as he may deem advisable; and to these ends the records are remitted, that further proceedings may be had not inconsistent with this opinion.