Luis DE VILLAR; Marco Rodriguez; Carmen Pietri, Joseph Pietri and Pedro Pietri as representatives of the Estate of William Pietri, decedent; Carmen Valette; Constance Hotaling; Angela Hariri as representative of the Estate of Betty Bonilla, decedent; Eric Hotaling; Sylvia Vega; Hector Lopez; and Steven Jones, Plaintiffs,

v.

The CITY OF NEW YORK; Anthony Gliedman, individually and in his capacity as Commissioner, Department of Housing Preservation and Development of the City of New York; and Milton Silverman, individually and in his capacity as a Real Property Manager of the Office of Property Management of the Department of Housing, Preservation and Development of the City of New York, Defendants.

No. 83 Civ. 1768(PNL).

United States District Court,
S.D. New York.

Jan. 27, 1986.

Debevoise & Plimpton by John Kiernan, New York City, for plaintiffs.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City by Daniel L. Schneider, Asst. Corp. Counsel, for defendants.

## OPINION AND ORDER

LEVAL, District Judge.

Defendants move for summary judgment dismissing charges brought by squatters and illegal occupants at 126 La Salle Street, a city-owned building. These plaintiffs allege that their eviction from the building without notice by the New York City Department of Housing Preservation and Development and by the New York City Police violated their constitutional rights. Their action is brought under 42 U.S.C. § 1983. A motion for judgment on the

pleadings was previously denied. Summary judgment is now granted.[1]

*Background*

Defendants are the City of New York; Anthony Gliedman, individually and as Commissioner of HPD; and Milton Silverman, individually and as the Real Property Manager of the Office of Property Management of the HPD.

Six plaintiffs are implicated in this motion. Carmen Valette, Constance Hotaling, Eric Hotaling, and Sylvia Vega were squatters who entered the building without permission or authority in the Fall of 1981. Luis del Villar[2] and Marco Rodriguez, having been hired as superintendents at 126 La Salle in January 1981, were terminated in August 1981, after which time they continued to live in the building illegally without paying rent.

Title to the building vested in the City of New York in 1977 through *in rem* tax foreclosure. In May 1981, the building was placed in a Consolidation Program, pursuant to which the building was to be closed down because it was underutilized and too expensive to repair. On June 15, 1981, HPD ordered the immediate relocation of the residents remaining in the nine occupied apartments at 126 La Salle (Pl. Affid., Ex. B). Eve Lampert, the Area Director of HPD, ordered on August 31, 1981, that the burner for the heating system and all other salvageable materials be removed from the building.

In October 1981, defendant Milton Silverman, an assistant to Eve Lampert, went to 126 La Salle to attempt to persuade squatters to leave the building and to direct legal tenants to find other apartments (Def's Affid. ¶ 3 & 4). He returned to the building for the same purpose on November 9, 1981 (Complaint, ¶ 28). At both times, Mr. Silverman was accompanied by police officers (Complaint ¶ 27 & 28).

On December 7, 1981, HPD posted a vacate order in 126 La Salle informing the occupants that they must vacate the premises within thirty days (Complaint, ¶ 30). On December 8, 1981, twelve HPD officials accompanied by approximately thirty police officers entered the building under the direction of defendant Milton Silverman (Complaint, ¶ 33). The officers ordered all residents to vacate or face arrest for criminal trespass (Complaint ¶ 34). All plaintiffs abandoned their apartments except Constance Hotaling who was arrested and held for an hour (Complaint, ¶ 35).[3] The occupants were not allowed to gather their belongings that day (Complaint, ¶ 35). The next day they were permitted to remove their personal property from the building.

Plaintiffs filed an Article 78 Proceeding, New York Civil Practice Law and Regulations, in New York State Supreme Court, New York County. On December 28, 1981, the State Supreme Court ordered that certain of the plaintiffs be allowed to reenter their apartments in 126 La Salle (Complaint, Ex. 1). They were permitted to remain in their apartments until they were relocated by the City to other housing in 1983 and 1984. The City consented by stipulation on February 22, 1983 to civil suit in exchange for plaintiffs cancelling the scheduled hearing in the Article 78 proceeding (Complaint, Ex. 3).

On March 8, 1983, plaintiffs filed suit against defendants in New York State Supreme Court and in federal district court, alleging violation of their Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983, and the state tort claims of unlawful eviction, trespass, assault, false arrest and intentional infliction of emotional distress.

---

1. The action also involves complaints of legal tenants. Those are not involved in this motion.

2. Plaintiffs' papers advise that the correct spelling of plaintiff's name is del Villar. The complaint spelled it as it appears in the caption; if plaintiffs wish to amend the caption, counsel should take the appropriate steps.

3. Constance Hotaling was placed under arrest and detained in a police van for an hour. Steven Jones, a plaintiff not implicated in this motion, was also placed under arrest, handcuffed and detained in a police van for two hours. The charges against Jones and Hotaling were subsequently dismissed. Complaint, ¶ 37.

*Discussion*

■ Summary judgment is to be granted under Fed.R.Civ.P. 56(c) only if the competent evidence submitted demonstrates that there is no material issue of fact and that the moving party is entitled to judgment as a matter of law. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The affidavits and exhibits submitted by the parties "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Burtnieks v. City of New York*, 716 F.2d 982, 985 (2d Cir.1983). However, when a party has made a showing sufficient to warrant summary judgment, the opposing party is obliged to come forward with affidavits or other properly qualified evidence to demonstrate that there is a material issue of fact.

In the first two counts of their complaint, plaintiffs allege that their eviction by HPD officials acting under color of state law deprived them of their right to property without due process of law as well as of their substantive due process rights. Defendants concede that they were acting under color of state law. But there is no showing of any violation of constitutional rights. Plaintiffs have failed to submit evidence raising a material issue of fact as to the denial of any federal constitutional right. Moreover, even if plaintiffs had shown evidence of a constitutional violation, they have failed to submit evidence raising a material issue of fact as to the liability in damages of either the City or the individual defendants.

### I.

Plaintiffs were trespassers, squatters and illegal occupants of the building. They had no constitutional property interest in the apartments they occupied. There was no legal bar to arresting them for criminal trespass if the City officials had decided to make a criminal complaint. Nor do trespassers/squatters possess a constitutional entitlement to notice and court proceedings before being arrested (or evicted). They have shown no deprivation of "rights, privileges or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981).

■ Four of the plaintiffs who entered the building illegally after it was placed in the consolidation program, and without ever paying rent to the City, claim to have acquired a property interest in their apartments. Quite clearly, the plaintiffs had no more of a property interest in those apartments than in any others in the City they might have trespassed into and encamped within, that is, none at all. *See 272-4-8 East 7th Street Tenants Assn. v. City of New York*, 117 Misc.2d 783, 459 N.Y.S.2d 346 (N.Y.Sup.Ct.1982) (post-Consolidation squatters have no right to enjoin the City from closing the premises). Bare possession is not constitutionally protected. *Rosado v. Dudio*, No. 83 Civ. 2407, slip op. at 7 (S.D.N.Y. Dec. 20, 1984).

■ Plaintiffs del Villar and Rodriguez acquired their apartments lawfully in return for their services as superintendents. Their employment was terminated in August 1981, however, four months prior to the evictions. As explained by a New York state court, "where landlord gave possession of apartment to an individual, hired as a superintendent, as an incident of such employment, ... no relationship of landlord-tenant arises." *Dobson Factor v. Dattory*, 80 Misc.2d 1054, 364 N.Y.S.2d 723, 724 (N.Y.Civ.Ct.1975). Thus, on the undisputed facts, any interest del Villar and Rodriguez had in the property ceased with the termination of their employment as would any other form of compensation. After their termination, neither made any attempt to pay rent for the two apartments to the City.

Because the plaintiffs had no property interest in the apartments they were living in, their evictions did not implicate the Due Process Clause of the Fourteenth Amendment.

Plaintiffs next argue that New York law entitled them to ten days' notice and that this entitlement is enforceable as a constitutionally protected right in an action under § 1983. Their argument fails as a matter of New York law. Even if they were right as a matter of New York procedure, this would not make a constitutionally protected right.

■ The argument under New York law refers to *N.Y. Real Prop. Acts.*, § 713(3), (McKinney's 1979). Plaintiffs misread this statute. It does indeed provide a ten day notice period for a landlord to receive a *judgment,* evicting squatters through summary proceedings. The fact that a court will not issue a judgment of eviction without ten days notice in no way implies that an owner is barred by law from removing a trespasser or illegal occupant. The very argument is prepostrous and plaintiffs cite nothing to support it. Section 713(3) of the Real Property Law would not have prevented arresting plaintiffs for criminal trespass under the *N.Y. Penal Law,* § 140.-15 (McKinney's 1975). Nor does it bar threatening to do so.

■ Plaintiffs further argue that the City has customarily followed the notice procedure under § 713(3) before evicting squatters. Regardless whether this is true, it does not confer a legal right, nor does it create a "mutually explicit understanding ... of entitlement." *Perry v. Sinderman,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Even if plaintiffs could point to a procedural requirement under New York State law, this would not give them a constitutionally protected right. *See Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983); *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984). Although the Constitution has been much trivialized, *see* Friendly, *The Bill of Rights as a Code of Criminal Procedure,* 53 Calif.L.Rev., 929 (1965), it has not progressed to the point where every

notice provision of state real property law has become a matter of constitutional right, even when a municipality is landlord, having taken possession under a tax foreclosure.

Defendants have established that they are entitled to summary judgment dismissing plaintiffs' action under § 1983 for failure to show any constitutionally protected right. Plaintiffs have shown no issue of material fact requiring trial. Accordingly, the first two counts of the complaint are dismissed as against all defendants.

## II.

■ Even if the competent evidence showed a violation of § 1983, the actions against defendants Gliedman and Silverman in their individual capacities would be precluded by their qualified immunity. It is well settled law that government officials acting within the course of their employment are entitled to a qualified immunity from civil damages; this protects them from liability in damages if their conduct did not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Indeed, as established in *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984), the defendants would not lose this immunity even if their conduct violated state law. In light of my determination discussed above (pp. 5–8) that defendants violated no *constitutional* right of plaintiffs, it follows that the individual defendants can have no personal liability for damages. But if it were held otherwise as to whether plaintiffs had shown a violation of the constitutional rights, no such rights were "clearly established" at the time of the events. *See Harlow, supra* 457 U.S. at 818, 102 S.Ct. at 2738. Gliedman and Silverman are therefore within their qualified immunity and are entitled to summary judgment dismissing the action.[4]

4. As required, both individual defendants affirmatively pleaded their good faith in their affidavits before this court.

III.

The claims against the officials in their "official capacity" seek damages against the governmental entity of which the officers are agents, in this case the City of New York. *Brandon v. Holt,* —— U.S. ——, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985); *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978).

In *Monell, supra,* the Supreme Court held for the first time that cities were liable to suit under § 1983. The Court did not extend this liability to all acts by City officials resulting in violations of federal law, but only to those acts which reflected an official policy or custom. *Monell, supra,* at 690–93, 98 S.Ct. at 2035–37. *Kentucky v. Graham,* —— U.S. ——, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985). As the Court of Appeals has explained: "Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the City." *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983). Plaintiffs have failed to make this showing.

Plaintiffs neither contend nor submit evidence that it was the policy or custom of the City to evict squatters without notice and an opportunity to be heard. Indeed, plaintiffs concede the contrary in their 3(g) Statement (¶ 13).[5] Consequently, there is not even an issue in this case whether the City is liable in damages under *Monell,* and the City is entitled to summary judgment dismissing the claims under § 1983.

SO ORDERED.

---

**5.** Plaintiffs allege in their 3(g) statement that: "The City had a regular and consistent policy and practice, breached only in the case of 126 LaSalle Street, of evicting squatters only through legal proceedings rather than forcible police action." Plaintiffs' 3(g) Statement, ¶ 13.