**Thomas ABRAMS, et al,**

v.

**Mayor Marc H. MORIAL, et al.**

**Civil Action No. 94–2508.**

United States District Court,
E.D. Louisiana.

May 9, 1997.

Thomas Abrams, New Orleans, LA, pro se.

Fiona Abrams, New Orleans, LA, pro se.

Joseph Vincent DiRosa, Jr., City Attorney's Office, New Orleans, LA, Avis Marie Russell, Simon, Peragine, Smith & Redfearn, L.L.P., New Orleans, LA, Terri Fleming Love, Civil District Court, New Orleans, LA, Franz L. Zibilich, City of New Orleans City

Hall, New Orleans, LA, for Marc Morial, City of New Orleans.

Joseph Vincent DiRosa, Jr., City Attorney's Office, New Orleans, LA, Avis Marie Russell, Simon, Peragine, Smith & Redfearn, L.L.P., New Orleans, LA, Franz L. Zibilich, City of New Orleans City Hall, New Orleans, LA, for Thomas Dupaty, John Roussell, Vincent Sylvain, Urban Homeowner's Corp. of New Orleans, Thelma French, Renita Bivins, Glenis Scott.

## ORDER AND REASONS

FALLON, District Judge.

Before the Court is defendants' Mayor Marc H. Morial, the City of New Orleans, Thomas Dupaty, John Roussell, Vincent Sylvain, the Urban Homeowner's Corporation of New Orleans, Thelma French, Renita Bivens and Glenis Scott's motion for summary judgment in the above captioned matter. For the following reasons, the defendants' motion for summary judgment is GRANTED.

## BACKGROUND

The genesis of this litigation occurred six years ago. Some time in 1991, the plaintiffs, Thomas and Fiona Abrams, began occupying a historic New Orleans home known as "Treme Villa" which is located at 1418 Governor Nicholls Street, New Orleans, Louisiana.[1] Mr. Abrams states that he and his wife began living at Treme Villa rent free in 1991 pursuant to an oral lease agreement with the owner of the property[2] wherein he was to perform the duties of a caretaker in exchange for his occupancy.

On September 10, 1991, one of the defendants in this case, the Urban Homeowner's Corporation of New Orleans (UHCNO), purchased the property in question. Over the next two and one-half years, the UHCNO did nothing to acknowledge or accept the prior relationship between the previous owner and Mr. Abrams. However, the UHCNO did know of Mr. Abrams occupancy of Treme Villa and simply choose to do nothing about it.

By July 1994 the circumstances surrounding Treme Villa had changed and the UHCNO decided it was time for the plaintiffs to leave 1418 Gov. Nicholls Street. To this end, on July 8, 1994, Thomas Dupaty and John Roussell, both employees of the City of New Orleans, appeared at Treme Villa and verbally ordered the plaintiffs to leave the premises in three days. Mr. Abrams, whose wife Fiona was eight months pregnant at the time, refused.

On July 12, 1994, Dupaty and Roussell's request was followed up by Thelma French, an employee of the UHCNO, who arrived with New Orleans Police Officers in an attempt to have the plaintiffs evicted forthwith by the police. Again, the plaintiffs refused to leave. The police reviewed the situation and declined to act on French's request. Additionally, health and building inspectors were called out to evaluate the property, but again no action was taken against the plaintiffs. Thereafter, no official action was taken for a number of days.[3] The events as described above are those complained of by the plaintiffs in this lawsuit filed July 29, 1994, and provide the basis for their 42 U.S.C. § 1983 complaint claiming that their constitutional rights were violated. However, the Court's recitation of the facts cannot end here.

On July 21, 1994, the UHCNO served a written notice to vacate on the plaintiffs ordering them to vacate the property by the end of the month. Again, the Abrams demurred and refused to vacate. On August 2, 1994, the UHCNO served the plaintiffs with a five-day notice to vacate which was also ignored. Finally, a rule for possession was filed by the UHCNO on August 11 and a final judgment entered in the UHCNO's fa-

---

**1.** Treme Villa is also known as Simon Meillur House. It was built in 1828 and has been designated by the New Orleans Historic Landmarks Commission.

**2.** Neither party has specifically named the previous owner of the property in their briefs. However, defendants' exhibit F states that the Urban Homeowner's Corporation of New Orleans pur-

chased 1418 Gov. Nicholls Street from Udo Mey and Hans Schubert.

**3.** After July 12, 1994, the UHCNO allowed a film crew to use the Treme Villa property for a movie production over a period of several weeks. This fact and the events surrounding it are not contained in the plaintiffs' complaint and do not effect this matter.

vor on August 19, 1994. This judgment was affirmed in a written opinion by the Louisiana Fourth Circuit Court of Appeals with review denied by the Louisiana Supreme Court and the United States Supreme Court.[4] Subsequent to these decisions, the plaintiffs were evicted from 1418 Gov. Nicholls Street.

The defendants have filed the instant motion for summary judgment on the grounds that the issues raised in the plaintiffs' complaint have been litigated—in the matter involving the UHCNO's rule for possession—and are res judicata between these parties. Furthermore, the defendants contend that those allegations or issues which do remain do not suffice to state a claim for which relief may be granted under 42 U.S.C. § 1983. The plaintiff counters that the "acts" complained of in this suit is the July 8–12th "illegal eviction" and not the subsequent eviction in which the rule for possession was entered. Therefore, the Abrams maintain that their constitutional claims must be allowed to proceed to trial.

This motion raises questions concerning the res judicata effect of a prior judgment and the substantive due process rights, if any, of the plaintiffs. The Court will address each in turn.

### Analysis

### 1. Res Judicata

■ The doctrine of res judicata has developed over the years to insure the finality of judgements so as to conserve judicial resources and avoid multiple and needless lawsuits. *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir.1994). "Public policy and the interest of litigants alike require that there be an end to litigation, and the peace and order of society demand that matters distinctly put in issue and determined by a court of competent jurisdiction as to parties and subject-matter shall not be retried between the same parties in any subsequent suit in any court." *State Hosp. for Criminal Insane v. Consolidated Water Supply Co.*, 267 Pa. 29, 110 A. 281 (1920). While the

underpinnings of this doctrine are strong, res judicata should not and cannot be used to deprive litigants of their day in court.

■ Res judicata encompasses two separate preclusion concepts. The first is "claim preclusion" or pure res judicata. Claim preclusion requires that four conditions are met. They are as follows: "(1) the parties in a later action must be identical to, or at least be in privity with, the parties in a prior action; (2) the judgment in the prior action must have been rendered by a court of competent jurisdiction; (3) the prior action must have concluded with a final judgment on the merits; and (4) the same claim or cause of action must be involved in both suits." *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir.1994); *Gulf Island–IV, Inc. v. Blue Streak–Gulf Is. Ops.*, 24 F.3d 743, 746 (5th Cir.1994), *cert. denied sub nom, Blue Streak, Inc. v. Gulf Island IV, Inc.*, 513 U.S. 1155, 115 S.Ct. 1112, 130 L.Ed.2d 1076 (1995). Claim preclusion is motivated by the principle of waiver in that if a party fails to raise a claim or loses on a claim in a prior action he, therefore, waives his right to make that claim in a subsequent action. *Shanbaum*, 10 F.3d at 310.

■ The second concept is issue preclusion or collateral estoppel, as it is commonly called. Again, four conditions must be met for issue preclusion to be appropriate. They are as follows: "(1) the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action; (2) the issue must have been fully and vigorously litigated in the prior action; (3) the issue must have been necessary to support the judgment in the prior case; (4) there must be no special circumstance that would render preclusion inappropriate or unfair." *Shanbaum*, 10 F.3d at 311; *Winters v. Diamond Shamrock Chemical Co.*, 901 F.Supp. 1195, 1203 (E.D.Tex.1995). Issue preclusion is driven by the need for the finality of judgments and the natural trustworthiness between courts. *Shanbaum*, 10 F.3d at 311.

---

4. *See Urban Homeowner's Corp. of New Orleans v. Abrams*, 94–CA–2135, 654 So.2d 1375 (La.App. 4th Cir. May 16, 1995) (unpublished opinion).

The defendant's motion for rehearing was denied without comment on July 3, 1995. This opinion will be more fully discussed below.

It is unclear from the defendants' brief whether they seek to assert issue or claim preclusion, however, it is clear that claim preclusion does not apply in this case. This matter involves a claim for a violation of the plaintiffs' constitutional rights on July 8–12, 1994. Such a claim was not involved in any prior action referenced by the defendants. Thus, the fourth requirement for claim preclusion is not met. *Id.* at 310.

Turning to issue preclusion, the Court finds that the elements necessary to implicate that doctrine are present in this case. Many of the issues raised by the parties in this matter were considered in and are identical to those issues litigated in *Urban Homeowner's Corp. of New Orleans v. Abrams.*[5] Moreover, the issues involved in the prior matter were fully and vigorously litigated between the plaintiffs herein and defendant UHCNO and said issues where necessary to support the judgment of the Louisiana Fourth Circuit. Finally, the Court finds that there are no special circumstances involved in this case which would render issue preclusion inappropriate or unfair.

Having found that issue preclusion is applicable, the Court now turns to the Louisiana Fourth Circuit's opinion in *Urban Homeowner's Corp. of New Orleans v. Abrams* to determine which issues raised in the prior matter are res judicata as to this action.[6] Initially, the plaintiffs' assertion that defendant UHCNO is not the owner of the subject property was dismissed by the Fourth Circuit which found that UHCNO had been the owner of the property since September 1991. Second, it was determined that there was no evidence of a written lease between Mr. Abrams and the prior owner and that any oral lease between the two was of no effect

as to the UHCNO. Third, the *Abrams* court held that Mr. Abrams' "relationship to plaintiff (the UHCNO) is that of an occupant without any legal right to remain in the premises."[7] Additionally, the fact that defendant UHCNO took no steps to remove the Abrams for close to three years "did not provide him (Mr. Abrams) with some privileged status regarding the property."[8] (emphasis added)

In summary, the Court finds that the plaintiffs are precluded from litigating the following issues in this case because a final judgment by a court of competent jurisdiction over the subject matter and parties[9] has been entered as to the following issues: 1) the UHCNO is the owner of 1418 Gov. Nicholls Street; 2) no contractual relationship, i.e. a lease, existed between the plaintiffs herein and the defendants; and 3) the plaintiffs were occupants of the property with no legal right to remain and with no special status in the property.[10] However, the plaintiffs' constitutional claim remains viable as the constitutional issues have not been previously litigated in another matter. Therefore, mindful of the issues which have been determined by a prior judgment, the Court turns to the question of whether the Abrams had any due process rights in the subject property which could have been violated in this instance and thus give rise to a § 1983 claim.

## 2. Substantive Due Process Rights

As stated above, the plaintiffs assert that the actions of the defendants on July 8–12, 1994–the alleged illegal attempted eviction—were a violation of their constitutional rights. While the plaintiffs' complaint does not specifically state what constitutional right the plaintiffs allege was infringed, the plaintiffs do reference in their brief an alleged viola-

---

5.  *See* Note 4 *supra.*

6.  So as to avoid needless citations, the Court notes at this time that all of the findings of the prior ruling which will be discussed are found in *Urban Homeowner's Corp. of New Orleans v. Abrams, supra.* (cites will be provided for direct quotations). This opinion by the Louisiana Fourth Circuit Court of Appeals was the final written ruling in this case and has been attached as defendants' exhibit C.

7.  *Id.* at page 2.

8.  *Id.*

9.  The plaintiffs do not dispute the fact that the Louisiana Fourth Circuit Court of Appeals was a court of competent jurisdiction over the subject matter and the parties in the prior matter.

10. The Court also notes that the Louisiana Fourth Circuit found that the elements of an abuse of rights claim were not present in that case.

tion of their due process rights. *See* U.S. Const. amend. XIV, § 1. The plaintiffs are correct in that they are seeking to make a claim for an alleged due process violation.

■ The existence of a recognized liberty or property interest protected by the Constitution is a threshold requirement to a due process claim, regardless of whether substantive or procedural due process rights are involved. *Stiesberg v. State of California*, 80 F.3d 353, 356 (9th Cir.1996). Constitutionally protected liberty interests may only be created by the due process clause or by state law. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). "In order for a person to have a *property* interest within the ambit of the Fourteenth Amendment, he 'must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' ... Property interests are not created by the Constitution; rather, they stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings. [I]t is clear that the sufficiency of the claim of entitlement must be decided by reference to state law.'" *Blackburn v. City of Marshall*, 42 F.3d 925, 936–37 (5th Cir.1995) (citations omitted, emphasis added).

■ In this case, the alleged source of the plaintiffs' property interest was his occupancy of Treme Villa for a number of years as the caretaker of the property. However, it is unclear how the plaintiffs' occupancy of a piece of property in which they have no legal right to remain can constitute a property interest protected by the U.S. Constitution. Clearly, the Abrams were not the owners of 1418 Gov. Nicholls Street nor do they claim to be. Additionally, the plaintiffs had no contractual right under a lease—through either a mutual understanding or otherwise—to occupy the property. These issues have been previously determined. The plaintiffs were simply occupants of the property or, more simply stated, squatters. Therefore, the Court must look to other aspects of state law—meaning other than ownership rights or leasehold rights—to determine whether the plaintiffs, as squatters, had any substantive due process rights in the property.

■ It is generally accepted that a squatter has no protected liberty or property interest in the property he occupies unless of course some aspect of state law vests him with such an interest. *See Amezquita v. Hernandez–Colon*, 518 F.2d 8, 13 (1st Cir. 1975), *cert. denied*, 424 U.S. 916, 96 S.Ct. 1117, 47 L.Ed.2d 321 (1976). Looking to the law of Louisiana, the Court sees two possible avenues through which the plaintiffs could establish a due process right to 1418 Gov. Nicholls Street. The first is under the doctrine of "possession" of the property and the second is through a procedural safeguard.

■ Under Louisiana law, possession of an immovable or movable carries with it certain rights such as being provisionally considered the owner of the thing possessed. La. Civ. Code art. 3423 (West 1997). However, in this case, the plaintiffs were not in possession of the property as that term is defined under Louisiana law. See La. Civ.Code art. 3421 (West 1997). To acquire possession, one must do three things: 1) take actual corporeal possession of the property, 2) possess the property for over a year and 3) intend to possess as owner. La. Civ.Code art. 3422 & 3424 (West 1997). While the plaintiffs did have corporeal possession of the property for over a year, they never had the intent to possess Treme Villa as owner. At all times they either possessed in the name of another—the previous owner—or intended to possess for another as a caretaker. Therefore, intent to own cannot be presumed in this case and the uncontradicted facts simply do not support a finding of intent to own. La. Civ.Code art. 3427 (West 1997). Moreover, the plaintiffs do not argue that they ever intended to own Treme Villa or live on the property in any role other than as a caretaker. Thus, the Abrams had no liberty or property interest in the property as possessors.

■ Finally, the Court turns to the one procedural safeguard created by state law to protect squatters from immediate eviction. In this case, the plaintiffs were simply occupants of the property as that term is defined under Louisiana law in that they occupied the property with the permission of the former owner but without any legal right to remain. La.Code Civ. Proc. Ann. art. 4704

(West 1961). When an owner of immovable property wishes to evict an occupant, the owner must first serve upon the occupant written notice to vacate allowing the occupant five days from the date of delivery to vacate the premises. La.Code Civ. Proc. Ann. art. 4702 (West 1961). In this case, the owner of the property, UHCNO, failed to follow the proper procedure to evict the plaintiffs, thus making that attempted eviction improper. Regardless of this violation, the question presented is whether the procedural safeguard created by § 4701 vests in the plaintiffs a constitutionally protected liberty or property interest in the property.

In *De Villar v. City of New York*,[11] the court addressed a similar issue in regard to New York state law. In that case, New York law provided that a landlord could make use of a summary eviction proceeding against a squatter after a ten-day notice period which the owner in that case had failed to follow. *Id.* at 84. The *De Villar* court found that since the squatters had no property interest in the apartments they occupied, the existence of a procedure for their removal did not create a constitutionally protected right.[12] *Id.* "Procedural requirements in a statute or regulation, absent some separately articulable substantive entitlement, do not give rise to a constitutionally protected property or liberty interest." *Anderson v. New York City Housing Authority*, 1995 WL 571375 *5 (S.D.N.Y. Sept.28, 1995); *See also Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985).

In this case, the five-day notice requirement found in Louisiana's Code of Civil Procedure does not work to create some substantive property right on behalf of the plaintiffs/occupants of 1418 Gov. Nicholls Street. Furthermore, the procedural requirements found in § 4702 do not exist in conjunction with a separate substantive entitlement. Therefore, the plaintiffs had no due process rights in Treme Villa for the defendants to disregard or ignore. Thus, the plaintiffs have failed to state a claim under 42 U.S.C. § 1983 for a violation of their constitutional rights.[13]

### Conclusion

For the foregoing reasons, the defendants'—Marc H. Morial, the City of New Orleans, Thomas Dupaty, John Roussell, Vincent Sylvain, the Urban Homeowner's Corporation of New Orleans, Thelma French, Renita Bivens and Glenis Scott—motion for summary judgment dismissing the plaintiffs claims under 42 U.S.C. § 1983 is GRANTED.

Additionally, the Court, considering that the plaintiffs' federal claim has been dismissed, declines to exercise its pendent jurisdiction over the plaintiffs' remaining state law claims. Therefore, it is hereby ordered that the plaintiffs' state law claims be DISMISSED without prejudice for lack of jurisdiction.

---

**11.** 628 F.Supp. 80 (S.D.N.Y.1986).

**12.** The *De Villar* court stated, "[a]lthough the Constitution has been much trivialized, ..., it has not progressed to the point where every notice provision of state real property law has become a matter of constitutional right, even when a municipality is landlord...." *Id.* (citations omitted)

**13.** Assuming, *arguendo*, that the plaintiff did have a due process right in 1418 Gov. Nicholls Street,

the Court notes that, based on the facts alleged, those rights were not violated. The plaintiffs were not evicted. There were only threats of eviction which defendant UHCNO had a right to do. Such actions by the defendants do not amount to a constitutional violation. Therefore, even if the plaintiffs did possess some due process rights in this instance, they have failed to state a claim upon which relief could be granted under 42 U.S.C. § 1983.