**[J-36-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 767 CAP |
| | : | |
| Appellee | : | Appeal from the Order dated May 23, |
| | : | 2018 in the Court of Common Pleas, |
| | : | York County, Criminal Division at No. |
| v. | : | CP-67-CR-0001762-1991. |
| | : | |
| | : | SUBMITTED: March 11, 2019 |
| PAUL GAMBOA TAYLOR, | : | |
| | : | |
| Appellant | : | |

## OPINION IN SUPPORT OF REVERSAL

**JUSTICE WECHT**                                     **DECIDED: November 6, 2019**

On December 8, 2014, Paul Gamboa Taylor filed his fourth petition pursuant to the Post Conviction Relief Act ("PCRA")[1] seeking a new appeal to this Court from the denial of his third PCRA petition. The PCRA court dismissed the fourth petition, holding that the court lacked the authority to grant the relief that Taylor sought. The PCRA court did, in fact, have the authority to grant the requested relief, if warranted on the merits of Taylor's claim. Accordingly, we would reverse the order of the PCRA court and would remand for further proceedings.

On May 20, 1991, Taylor was arrested and charged with five counts of first-degree murder. On December 19, 1991, Taylor pleaded guilty to five counts of homicide generally. Following a degree-of-guilt hearing on January 10, 1992, the trial court found Taylor guilty of first-degree murder on all five counts. That same day, the trial court

---

[1] *See* 42 Pa.C.S. §§ 9541-46.

proceeded to a sentencing hearing, at which the trial court sentenced Taylor to four death sentences on four counts of first-degree murder and a life without parole sentence on the fifth count. On January 23, 1992, the trial court formally imposed the sentences. This Court affirmed Taylor's judgment of sentence on direct appeal. *Commonwealth v. Taylor*, 634 A.2d 1106 (Pa. 1993) (*Taylor I*).

Taylor sought relief under the PCRA. The PCRA court denied relief, and this Court affirmed. *Commonwealth v. Taylor*, 718 A.2d 743 (Pa. 1998) (*Taylor II*). In February 1999, Taylor filed a second PCRA petition. Once again, the PCRA court denied relief, and this Court affirmed. *Commonwealth v. Taylor*, 753 A.2d 780 (Pa. 2000) (*Taylor III*).

In 2008, Taylor filed a third PCRA petition, in which he alleged that trial counsel had a conflict of interest. The Commonwealth was represented by the Office of Attorney General ("OAG"). The PCRA court denied relief on jurisdictional grounds. This Court affirmed. *Commonwealth v. Taylor*, 67 A.3d 1245 (Pa. 2013) (*Taylor IV*).

On December 8, 2014, Taylor filed the present PCRA petition, his fourth. Taylor asserted that news articles began to emerge in the fall of 2014 regarding former Attorney General Kathleen Kane's discovery of inappropriate emails on OAG servers that had been exchanged between employees of the OAG and the judiciary. On October 2, 2014, news accounts revealed that pornographic email chains included former Justice Seamus McCaffery and employees of the OAG. *See* Karen Langley, *High Court Justice Sent Emails with Explicit Content*, PITTSBURGH POST GAZETTE, Oct. 2, 2014; PCRA Petition, 12/8/2014, at Ex. A. According to Taylor, beginning on October 8, 2014, news accounts reported that the emails between Justice McCaffery and employees of the OAG were not limited to pornographic emails, but also included thousands more emails of an undisclosed nature between the Justice and OAG employees. News accounts also revealed that hundreds more emails were exchanged between members of the Supreme

Court and OAG staff. *See* Brad Bumsted & Adam Brandolph, *Castille Expects Emails' Delivery*, PITTSBURGH TRIBUNE REVIEW, Oct. 8, 2014; PCRA Petition, 12/8/2014, at Ex. A; Brad Bumsted, *Castille Clears All Justices but McCaffery in Porn Scandal*, PITTSBURGH TRIBUNE REVIEW, October 16, 2014; PCRA Petition, 12/8/2014, at Ex. A.

In his fourth PCRA petition, Taylor relied upon this email scandal to argue that he did not receive the "impartial and disinterested tribunal" that due process requires. *See Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). Taylor alleged that the impartiality of this Court was called into question by the number and content of emails exchanged between employees of the OAG and Justices of the Supreme Court at the time that *Taylor IV* was pending. Taylor asserted that these emails included, and demonstrated an apparent tolerance for, misogyny, racism, Islamophobia, anti-immigrant sentiment, and insensitivity to domestic violence, all in the guise of humor. Taylor claimed that, because he is of Hispanic and African-American descent, the emails demonstrated that former Justice McCaffery was biased against him. Additionally, according to Taylor, "[t]he disclosures reveal a virtual torrent of communications between the court deciding [Taylor's] fate and his party-opponent, the Attorney General's Office, during the pendency of his appeal, many of which have been found to be improper." PCRA Petition, 12/8/2014, 11-12. Taylor further alleged that two members of the OAG who represented the Commonwealth during the appeal in *Taylor IV* were named in news reports as having been engaged in communications with Justice McCaffery that included pornographic content.

Taylor acknowledged that his fourth PCRA petition facially was untimely. *See* 42 Pa.C.S. § 9545(b)(1) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final . . . ."). Taylor relied upon two exceptions to this time bar: Subsection 9545(b)(1)(i)

(requiring the petitioner to allege and prove that "the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States"), and Subsection 9545(b)(1)(ii) (requiring the petitioner to allege and prove that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence"). In 2014, both exceptions required the petitioner to file the petition invoking these exceptions within sixty days of the date the claim first could have been presented. 42 Pa.C.S. § 9545(b)(2) (2014).[2]

Taylor filed the petition on December 8, 2014. According to Taylor, this was within sixty days of October 8, 2014, and October 16, 2014, when the first news accounts revealed that communications were not limited to pornographic images sent by Justice McCaffery, but included thousands of emails from Justice McCaffery to members of the OAG. Taylor requested the PCRA court to remedy this alleged due process violation (*i.e.*, Justice McCaffery's participation in his appeal while exhibiting bias) by ordering a new appeal to the Supreme Court from the denial of relief on his third PCRA petition.

Shortly thereafter, on December 15, 2014, Taylor filed a motion to disqualify the OAG from representing the Commonwealth and a motion seeking discovery from the Commonwealth. The discovery motion asked that the Commonwealth be compelled to produce: "[c]opies of any and all emails, including attachments, exchanged between any employee of the [OAG] and any sitting or former member of the Supreme Court of Pennsylvania between the dates of April 8, 2009 and May 29, 2013, regardless of whom was the sender or recipient." Motion for Discovery, 12/15/2014, at 7.

---

[2] As amended, Section 9545(b)(2) now permits a petitioner invoking these exceptions to file the petition within one year of the date the claim could have been presented. *See* Act of Oct. 24, 2018, P.L. 894, No. 146.

While discovery was ongoing, media outlets began to report that Justice J. Michael Eakin also was involved in exchanges of inappropriate emails with OAG employees. On December 19, 2016, the Commonwealth filed responses to Taylor's disqualification and discovery motions. The Commonwealth supplied Taylor and the PCRA court with a copy of a Report prepared by Special Deputy Attorney General Douglas F. Gansler, entitled "Misuse of Commonwealth of Pennsylvania Government Email Communication System" (the "Gansler Report"), that was released to the public on November 22, 2016. This report was the culmination of a lengthy independent review of emails sent to and from the OAG and Supreme Court Justices between August 2008 and December 2015. On February 17, 2017, and March 2, 2017, the Commonwealth supplemented its filings.

On July 12, 2017, the PCRA court ordered a status conference: to identify the issues that Taylor was pursuing; to address whether additional discovery was warranted; to examine whether and how Taylor was prejudiced by email communications between Supreme Court Justices and the OAG; and to consider the authority of the PCRA court to award a new PCRA appeal to the Supreme Court. Prior to the status conference, on April 20, 2018, Taylor requested the appointment of a special master to assist in reviewing the 6.4 million emails that he believed were in the OAG's possession.

At the April 26, 2018 status conference, counsel for Taylor affirmed that Taylor was seeking relief for an alleged due process violation resulting from email communications between the OAG and former Justices McCaffery and Eakin.[3] Because the validity of this due process claim depended upon fact-finding, counsel requested a hearing. Counsel further affirmed that the appropriate relief for this claim would be a new appeal from the PCRA court's denial of relief on Taylor's third PCRA petition.

---

[3] Because information pertaining to Justice Eakin's role in the email scandal became public after Taylor filed his PCRA petition, Taylor would later seek leave to amend the petition to include Justice Eakin's conduct as an additional ground for relief.

Shortly after the status conference, on May 1, 2018, the PCRA court issued a notice of intent to dismiss the petition. *See* Pa.R.Crim.P. 909. Even assuming that there was a factual basis to support Taylor's requested relief, the PCRA court believed that it had no authority to direct the Supreme Court to permit another appeal in connection with Taylor's third PCRA petition.

On May 21, 2018, Taylor filed a response and objection to the notice of intent to dismiss, and sought permission to amend his PCRA petition to provide the PCRA court with information pertaining to emails exchanged between Justice Eakin and members of the OAG. On May 23, 2018, the PCRA court dismissed the petition and denied leave to amend. On June 21, 2018, the PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a).

On appeal to this court, Taylor raises three issues: whether the PCRA court had the authority to grant the requested post-conviction relief; whether the PCRA court erred or abused its discretion in denying discovery or the appointment of a special master; and whether the PCRA court erred or abused its discretion in denying Taylor's motion to amend the petition. We review the PCRA court's legal conclusions *de novo* and its findings of fact for record support. *Commonwealth v. Williams,* 196 A.3d 1021, 1026-27 (Pa. 2018).

**I. PCRA Court's Authority**

In his first issue, Taylor argues that the PCRA court erred in concluding that it lacked the authority to grant Taylor a new appeal from the denial of his third PCRA petition. Taylor asserts that he is prepared to demonstrate that his Fourteenth Amendment right to due process of law and his rights under Article I, Sections 1, 6, 9, 11, and 14, as well as Article V, Section 9 of the Pennsylvania Constitution, were violated by

the participation of two allegedly biased jurists in his appellate proceedings, or at least that there existed the appearance thereof. The remedy for such violations is, according to Taylor, a new appeal.

Taylor maintains that the PCRA court has the authority to order the relief requested, if warranted, by virtue of the PCRA, which, he asserts, is the exclusive mechanism for redressing constitutional violations after a conviction has become final. As an example of a court of common pleas providing exactly the type of relief that Taylor is requesting, Taylor directs the Court's attention to the Philadelphia Court of Common Pleas, which has been granting new appeals to this Court to defendants impacted by the United States Supreme Court's decision in *Williams v. Pennsylvania*, 579 U.S. ----, 136 S.Ct. 1899 (2016).[4]

In response, the Commonwealth agrees with the PCRA court that that court lacked the authority to direct this Court to hear Taylor's appeal anew because the PCRA court is subordinate to this Court. In addition, the Commonwealth argues that this Court's published disposition of Taylor's third PCRA appeal is binding precedent and the law of the case, and, therefore, may not be upset or set aside for any reason.

In his Opinion in Support of Affirmance ("OISA"), Justice Dougherty agrees with Taylor that the claim of appellate court error is cognizable under the PCRA, and that *nunc pro tunc* relief is at least theoretically an available remedy. Justice Dougherty, however, agrees with the PCRA court and with the Commonwealth that the lower court lacks the authority to authorize an appeal *nunc pro tunc* to remedy an appellate-level constitutional error. Because the lower courts are inferior to this Court, the lower courts cannot, according to Justice Dougherty, direct this Court to hear an appeal *nunc pro tunc* and simultaneously nullify the prior (purportedly tainted) judicial opinion.

---

[4] *See infra* at 10-11.

The circumstances presented in this case are indeed unusual. Taylor seeks relief in the form of a *nunc pro tunc* appeal awarded by the PCRA court to remedy a constitutional deprivation purportedly committed by this Court. While this case presents a novel question regarding the PCRA court's authority to grant the requested relief, we ultimately agree with Taylor that the PCRA vests the lower courts with the authority to remedy appellate-level constitutional violations by awarding a new appeal to this Court, if warranted by the facts and circumstances of the case.

Our legislature has determined that an action pursuant to the PCRA is "the sole means of obtaining collateral relief," encompassing "all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect." 42 Pa.C.S. § 9542; *see also Commonwealth v. Yarris*, 731 A.2d 581, 586 (Pa. 1999) ("By its own language, and by judicial decisions interpreting such language, the PCRA provides the sole means for obtaining state collateral relief."). To be eligible for relief, a petitioner is required to demonstrate that the conviction or sentence resulted from one or more of the following:

> (i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

> (ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

> (iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

> (iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

> (v) Deleted.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

42 Pa.C.S. § 9543(a)(2).

This statutory framework designates the courts of common pleas, serving as PCRA courts, as the repositories for petitions filed pursuant to the PCRA. *Id.* § 9545(a) ("Original jurisdiction over a proceeding under this subchapter shall be in the court of common pleas."). Collateral relief is directed at vindicating a convicted defendant's rights, and is available in limited circumstances only after a judgment has become final. 42 Pa.C.S. § 9545(b)(1) (providing generally that a petition must be filed "within one year of the date the judgment becomes final"). A judgment does not become final until "the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *Id.* § 9545(b)(3).

Thus, a PCRA petition may only be filed to raise claims attacking the validity of a final judgment. A final judgment necessarily depends upon the conclusion of direct appellate review (if sought). If an error of constitutional magnitude occurs during the appellate process, the PCRA is the sole means of collaterally attacking the final judgment on that basis. Contrary to the apparent misperception of the PCRA court, there is no requirement that a post-conviction claim be premised upon a violation of rights occurring at trial, nor is there any suggestion in the PCRA itself or in this Court's precedent that

alleged errors occurring in the appellate process are immune from collateral attack, or that only an appellate court can redress appellate errors.

This is true even when the alleged error implicates the fairness of an appellate jurist. Due process demands the absence of judicial bias. *See In re Murchison*, 349 U.S. 133, 136 (1955). A litigant's due process rights are violated if a biased appellate judge decides the fate of the litigant's appeal. *See, e.g.*, *Williams*, 136 S.Ct. at 1904.

In *Williams*, the petitioner filed a successive PCRA petition based upon newly discovered facts. The PCRA court directed the Commonwealth to turn over its files. The Commonwealth complied, revealing the trial prosecutor's sentencing memorandum, which bore then-District Attorney Ronald Castille's authorization to pursue the death penalty. The PCRA court ultimately granted relief and stayed Williams' execution. The Commonwealth sought emergency relief from this Court. By the time of the Commonwealth's filing, Ronald Castille had been elected to this Court and was serving as Chief Justice. Williams sought Chief Justice Castille's recusal, which the Chief Justice denied. In an opinion authored by Justice Eakin, this Court ultimately vacated the PCRA court's grant of relief, and reinstated Williams' death sentence. Chief Justice Castille joined Justice Eakin's majority opinion and authored a separate concurrence.

Williams appealed to the Supreme Court of the United States, asserting that Chief Justice Castille's decision as district attorney to seek a death sentence against Williams barred the Chief Justice from later adjudicating Williams' petition to overturn that sentence. Williams argued that Chief Justice Castille's decision to act as both accuser and judge violated the Due Process Clause of the Fourteenth Amendment. The Supreme Court of the United States agreed, holding "that under the Due Process Clause there is

an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case." *Williams*, 136 S.Ct. at 1905. The Court vacated this Court's appellate decision and remanded for *de novo* appellate review without Chief Justice Castille's participation. *Id.* at 1909-10.[5] Following *Williams*, the courts of common pleas have reinstated appellate rights to petitioners who brought claims based upon *Williams*.[6] The due process right to an impartial tribunal was vindicated in *Williams* through the award of a new appeal. If Taylor is able to plead and prove the unconstitutional potential for judicial bias in his prior post-conviction appeal, he too would be entitled to a new appeal without the participation of the allegedly biased justices.

To avoid rendering the Due Process Clause meaningless in the context of an unconstitutional potential for appellate-level judicial bias, Section 9543(a)(2)(i) of the PCRA vindicates constitutional errors that occur at the appellate level. The PCRA requires in Section 9543(a)(2)(i) that the petitioner prove that the conviction or sentence resulted from a constitutional violation which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." A claim that an appellate jurist harbored an unconstitutional potential for bias during a prior

---

[5]     By the time this remand occurred, Chief Justice Castille had retired from this Court. *See Williams*, 136 S.Ct. at 1905.

[6]     *See, e.g.*, Opinion, *Commonwealth v. Jones*, No. CP-51-CR-1035061-1991 (Phila. Cty. CCP Dec. 14, 2017); Order, *Commonwealth v. Reid*, No CP-51-CR-1024821-1988 (Phila. Cty. CCP June 22, 2017); Order, *Commonwealth v. Lee*, No. CP-51-CR-0511562-1986 (Phila. Cty. CCP June 1, 2017); Order, *Commonwealth v. Murphy*, No. CP-51-CR-0126101-1984 (Phila. Cty. CCP May 3, 2017); Opinion, *Commonwealth v. Rollins*, No. CP-51-CR-0405851-1986 (Phila. Cty. CCP Oct. 19, 2017).

proceeding calls into question the constitutionality of that proceeding and undermines the truth-determining process that resulted in that appellate decision.

The unconstitutional potential for bias of an appellate court judge presents a claim no different in any substantive way from one based upon unconstitutionally deficient representation by appellate counsel. Both are errors of constitutional magnitude that occur at the appellate level. This Court has embraced the PCRA as the sole means of seeking redress for the latter, holding that unconstitutionally deficient representation by appellate counsel may undermine the truth-determining process. *See, e.g., Commonwealth v. Liebel*, 825 A.2d 630, 635-36 (Pa. 2003). If a claim based upon the constitutional right to the effective assistance of counsel on appeal is cognizable under the PCRA, there is no basis to hold that a claim of appellate-level judicial bias pursuant to the Due Process Clause is not. A constitutional violation occurring at the appellate level may undermine the truth-determining process, whatever its source.

Justice Dougherty would hold that there is no support for the idea that a constitutional violation occurring at the appellate level is redressable through the PCRA. In particular, Justice Dougherty believes that the lower courts have no authority to remedy claims of constitutional magnitude occurring at the appellate level. We disagree. We find such authority in the PCRA itself. If a petitioner can plead and prove that the facts and circumstances of a particular case demonstrate that the conviction or sentence resulted from a violation of the Pennsylvania Constitution or the Constitution or laws of the United States that "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place," 42 Pa.C.S. § 9543(a)(2)(i), then the petitioner is entitled to relief under the PCRA. The fact that this Court sits atop the judiciary of

Pennsylvania does not elevate this Court above the law, nor can it support a conclusion that constitutional deprivations attributable to this Court are insulated from review. The rule of law applies to us as it does to all. And, to be sure, if this Court disagrees with the merits of the claim of judicial bias, this Court can overturn the relief afforded by the PCRA court.

Contrary to the Commonwealth's argument, the law of the case doctrine does not bar relief. Departure from the law of the case is warranted "where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create manifest injustice if followed." *Commonwealth v. Starr*, 664 A.2d 1326, 1332 (Pa. 1995).[7] As in *Williams*, when new evidence arises indicating the potential bias of a sitting jurist, there could be a change in the law and facts that would warrant reconsideration of the prior opinion.

The Commonwealth also asserts that the PCRA court lacks the authority to grant a *nunc pro tunc* appeal because *Taylor IV* is binding precedent. Justice Dougherty agrees with the Commonwealth that, if the PCRA Court were to grant an appeal *nunc pro tunc* premised upon a claim of appellate-level judicial bias, it would "for all practical purposes, wipe *Taylor IV* from the record books." OISA at 10. This conclusion ignores what follows the PCRA court's ruling. Assuming the Commonwealth appeals the grant of relief, *Taylor*

---

[7] While the law of the case doctrine determines the binding effect of prior judicial determinations against the same parties, precedent concerns the binding effect of legal principles upon different parties in cases involving substantially similar facts. *See, e.g., Commonwealth v. Tilghman*, 673 A.2d 898, 903 (Pa. 1996); *State Hosp. for Criminal Insane v. Consol. Water Supply Co.*, 110 A. 281, 284 (Pa. 1920).

*IV* would be nullified only if this Court subsequently affirmed the PCRA court's grant of relief. It would not be the PCRA court, but rather this Court, that has the final say on whether the record supports the relief awarded by the PCRA court.[8]

Instead of allowing for reinstatement of appellate rights upon pleading and proof of the unconstitutional potential for appellate-level judicial bias, Justice Dougherty would limit the available relief to the reinstatement of the rule-based right to seek reargument. See OISA at 12; Pa.R.A.P. 2543.

Such limitation does not comport with law. A request for reargument cannot suffice to vindicate the constitutional right at issue. As the United States Supreme Court stated in *Williams*:

> A multimember court must not have its guarantee of neutrality undermined, for the appearance of bias demeans the reputation and integrity not just of one jurist, but of the larger institution of which he or she is a part. An insistence on the appearance of neutrality is not some artificial attempt to mask imperfection in the judicial process, but rather an essential means of ensuring the reality of a fair adjudication. Both the appearance and reality of impartial justice are necessary to the public legitimacy of judicial pronouncements and thus to the rule of law itself.

*Williams*, 136 S.Ct. at 1899, 1909-10.

---

[8] It is interesting to ponder the ramifications of Justice Dougherty's position in a scenario where the appellate court that purportedly committed the constitutional violation is not this Court, but the Superior Court. The basis of Justice Dougherty's position is that the PCRA court lacks the authority to nullify precedent established by a higher court. Suppose, then, that we have two similarly situated post-conviction petitioners, each making a claim that the Superior Court committed a constitutional error in adjudicating the prior appeal. By happenstance, the Superior Court's decision in the first petitioner's case was published, but the Superior Court's decision in the second petitioner's case was not. The Superior Court decision for the second petitioner would not, therefore, be precedential. Accordingly, the PCRA court would not be disturbing precedent by awarding the second petitioner a *nunc pro tunc* appeal, while the PCRA court would be disturbing precedent by awarding the same relief to the first petitioner. While clearly beyond the scope of this appeal, we would suggest that the availability of redress for constitutional errors should not rest on so frail a distinction.

Given the High Court's insistence on the appearance of neutrality, it is not at all clear that exercising the rule-based right to seek reargument would remedy the potential bias in the initial decision and preserve the appearance and reality of impartial justice. As in *Williams*, the remedy for demonstrating that an appellate tribunal included a jurist with an unconstitutional likelihood of bias would be a new appeal to that tribunal without the participation of the partial jurist.

Moreover, limiting relief to the right to seek reargument would render this constitutional violation subordinate to other similar violations. All that would be available to a petitioner alleging a constitutional claim of appellate-level judicial error would be the chance to ask for relief from the same body that purportedly committed the constitutional violation. No other constitutional right necessitates such a discretionary threshold; certainly that was not the case in *Williams,* nor for claims premised upon appellate counsel ineffectiveness.

The parties agree that the PCRA court's legal conclusion prevented it from reaching the merits of Taylor's due process claim. Indeed, the Commonwealth has not yet filed an answer to Taylor's petition. The Commonwealth requests that, in the event that this Court disagrees with the PCRA court about its ability to provide the requested relief, this action be remanded to the PCRA court with instructions to proceed in the normal course, including the filing of an answer to the petition and, if warranted, an evidentiary hearing. We agree that this is the appropriate course of action. Because we have found that the PCRA court has the authority to grant the requested relief, if warranted, we would remand for the PCRA court to reconsider the PCRA petition in the normal course.[9]

---

[9] Contrary to Justice Dougherty's view, we do not believe that it is appropriate at this juncture to ascertain the timeliness of Taylor's petition. Although the timeliness of the petition determines the jurisdiction of the PCRA court, the PCRA court did not resolve the

## II. Discovery

We next consider whether Taylor is entitled to discovery. Taylor requested discovery of all emails exchanged between employees of the Attorney General's Office and any sitting or former member of this Court between April 8, 2009 and May 29, 2013. The Commonwealth produced the Gansler Report[10] and twenty-six emails exchanged

petition on timeliness grounds, and we have no developed record upon which to evaluate timeliness. Indeed, because the Commonwealth has yet to file an answer, the Commonwealth has not been afforded the opportunity to assert that the petition is not timely. The Commonwealth requests the ability to file an answer and to have the PCRA court consider it.

The timeliness of the petition will depend upon the PCRA court's analysis of whether "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence," 42 Pa.C.S. § 9545(b)(1)(ii), and whether the petition was "filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2). Taylor filed his petition on December 8, 2014. He asserts that this was within sixty days of news reports between October 8-16, 2014, revealing the extensive exchange of emails between Justice McCaffery and employees of the OAG.

Whether the earlier articles upon which Justice Dougherty relies provided the facts upon which Taylor's claim of judicial bias is based, thus triggering the sixty-days within which Taylor had to file his petition, is a question that should be resolved in the first instance by the PCRA court after hearing from both sides. Not only should the Commonwealth be given the opportunity to argue that the petition is untimely, but Taylor should also be given the opportunity to respond if the PCRA court resolves the case on jurisdictional grounds. *See* Pa.R.Crim.P. 909.

Additionally, after Taylor filed the relevant PCRA petition, this Court held in *Commonwealth v. Burton*, 158 A.3d 618, 637-38 (Pa. 2017), that "the presumption that information which is of public record cannot be deemed 'unknown' for purposes of subsection 9545(b)(1)(ii) does not apply to pro se prisoner petitioners." The parties should be afforded the opportunity to argue concerning the applicability of *Burton* to the timeliness considerations of this case.

[10] In his report, Mr. Gansler indicated that he had reviewed 6.4 million emails that had passed through OAG servers from 2008-2015 for inappropriate language and images, and had found 11,930 that he believed to be inappropriate. Gansler discussed these emails in general terms in his report. According to Taylor, the report is heavily

between OAG counsel of record in Taylor's case and former Justices of this Court. Taylor filed a motion for the appointment of a special master to review the 6.4 million emails in the possession of the OAG to determine whether they revealed additional evidence of impropriety. The PCRA court scheduled a status conference in part to discuss whether additional discovery was needed. In its notice of intent to dismiss the PCRA petition, the PCRA court denied the discovery request because Taylor had failed to seek additional discovery and otherwise "failed to effectively and timely prosecute his claim." Notice, at 4.

Discovery is appropriate in a serial PCRA petition "upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1). We review the denial of a post-conviction discovery request for an abuse of discretion. *Commonwealth v. Edmiston*, 65 A.3d 339, 353 (Pa. 2013).

It is not clear what the PCRA court believed Taylor could have done to prosecute his claim effectively. Taylor moved for discovery, sought the appointment of a special master, and addressed the need for discovery at the status conference. On the other hand, Taylor already has a number of emails involving former members of this Court that he asserts are, as a general matter, offensive and inappropriate. Taylor's apparent belief that there may be additional offensive and inappropriate emails would appear to be speculative.

Nonetheless, the PCRA court's decision not to permit further discovery may have been informed by the court's mistaken belief that, in any event, it could not award a new appeal to this Court. Because the PCRA court may wish to reconsider its discovery order in light of our opinion, and because we would remand to the PCRA court to allow the case

---

redacted, only discusses the content of a small subset of emails, and omits the identity of senders and recipients.

to proceed, it would be prudent to permit the PCRA court to reconsider Taylor's discovery request in light of these changed circumstances.

### III. Amendment

The PCRA court may grant leave to amend a PCRA petition at any time, and the court should freely allow amendment "to achieve substantial justice." Pa.R.Crim.P. 905(A). Taylor asserts that he obtained new information that was probative of his claims after he filed his petition, and he moved to amend his petition to present this additional evidence to the PCRA court. Taylor's amendment sought to incorporate information that became available in the judicial conduct proceedings against former Justice Eakin, in the Gansler Report, in the October 2015 deposition of Justice Eakin,[11] and in the report of an expert.[12]

The PCRA court denied leave to amend in order to avoid further delaying consideration of the petition. To the extent that the PCRA court arrived at this decision under its mistaken belief that it had no authority to grant a new appeal, notwithstanding any information Taylor could provide in an amendment, we once more believe that the PCRA court should reconsider this request on remand.

Because the PCRA court has the authority to grant a new appeal from the denial of Taylor's third PCRA petition, if warranted, we would reverse the PCRA court's contrary conclusion and would remand for further proceedings. To the extent this mistaken belief

---

[11]    *See In re Eakin*, 150 A,3d 1042 (Pa. Ct. Jud. Disc. 2016).

[12]    Taylor's expert, Jason Okonofua, Ph.D., would have offered opinions about how bias can affect judicial decision-making.

influenced the PCRA court's denial of discovery and denial of Taylor's request for leave to amend, we would direct the PCRA court to reconsider its holdings in regard.[13]

Justice Donohue joins this opinion in support of reversal.

---

[13] Taylor has filed several miscellaneous applications, which remain outstanding. First, Taylor has filed an application to correct the omission from the record of the PCRA court's orders scheduling, and postponing, the status conference. We would deny this application without prejudice for Taylor to renew his request upon remand.

Second, Taylor has filed an application to waive conflict, anticipating that members of this Court may choose to recuse themselves from consideration of this case. A jurist's decision to recuse is a matter of individual discretion or conscience. *See Commonwealth v. O'Shea*, 567 A.2d 1023, 1034 (Pa. 1989); *In re Crawford's Estate*, 160 A. 585, 587 (Pa. 1932). Accordingly, each member of this Court may resolve his or her own participation in this appeal.

Finally, Taylor has sought permission to file a reply brief in support of his application to waive conflict, and has sought permission to present oral argument to this Court. We would deny both of these applications.